## Case No. 13,519.

### In re STRACHAN.

[3 Biss. 181;[1] 4 Chi. Leg. News, 145.]

District Court, W. D. Wisconsin. Jan. Term, 1872.

BANKRUPTCY — PURCHASER OF CLAIMS — RIGHT TO PROVE — INTEREST — BANKRUPTCY FORMS.

1. A party who in good faith purchases claims against a bankrupt with the intention of stopping proceedings and giving him time, should not be deprived of participation in the estate.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

2. To enable him to prove them, however, he should take an assignment. A simple receipt of payment is not sufficient.

3. Such claims should be proven as of date of adjudication, but may draw interest to date of actual payment.

4. The bankrupt act [of 1867 (14 Stat. 517)] should not be so strictly construed as to prevent a debtor from making every effort to extricate himself from bankruptcy proceedings.

5. The forms, prescribed in the general rules are not binding, but may be altered to suit circumstances.

In bankruptcy. Objection by creditors to proof of debt by William T. Henry, against the estate, certified to the court by the register.

J. M. Smith, for Mr. Henry.

E. P. Weber, for opposing creditors.

HOPKINS, District Judge. The fact that the bankrupt owed the debts sought to be proven, is not disputed, and if it were, the proof is sufficient to satisfy me that he did owe them at the time of the commencement of the bankruptcy proceedings against him.

The main objection urged to the allowance of the claims is, that they were bought by him after the filing of the petition in bankruptcy, and such is the fact, except as to an accommodation acceptance of $3,000 which was given before that time. At the time of filing the petition a very large proportion of the bankrupt's indebtedness was evidenced by promissory notes and bills of exchange, all of which, so far as known, were purchased by Mr. Henry before the adjudication.

After the proceedings were commenced, he says he thought that, if they could be discontinued, the bankrupt could pay all his debts and have something left; but, if forced through bankruptcy, his estate would not pay all; that, acting upon that hypothesis, he undertook to buy up all the debts at eighty cents on the dollar, and end the proceedings; that after buying up over $50,000 worth (being all the undisputed claims,) he found some which were not acknowledged as just by the bankrupt, and which the parties being unable to adjust satisfactorily, prevented him from carrying out his purpose. Thereupon he decided to let the proceedings go on, and Mr. Strachan was accordingly by default, on the 20th day of May, 1871, adjudged a bankrupt.

The parties representing such disputed claims (which are still in progress of trial and not yet allowed) object to Mr. Henry's being allowed to prove his claims, because he bought them after the filing of petition in bankruptcy. He owns all the claims against the bankrupt except the claims of the parties opposing his right to prove.

The testimony satisfies me that he, in good faith, undertook to buy up all the claims against the bankrupt with the intention of stopping these proceedings and giving him time to pay them, and was only prevented

from doing so by the presentation of some claims that were disputed by the bankrupt, and not being able to settle and purchase those, the continuance of the proceedings already pending, or the commencement of new ones, he thought, was unavoidable. I do not see that in so doing he violated any of the provisions of the bankrupt act, nor did he interfere with the rights of the creditors whose claims he did not buy, nor did his acts in any manner affect injuriously their rights in the bankruptcy proceedings.

I do not think the act should be construed so strictly as to prevent the bankrupt from making any effort to extricate himself from the bankruptcy proceedings, and if he can find a friend to buy up his debts, for the purpose of giving him time to convert his property into money to pay them, I think he should be allowed to do so. I do not think a person who honestly undertakes to purchase up the debts for such purpose, after he has purchased the principal part, as in this case, and then fails because some party presents a claim which is denied by the bankrupt, should be deprived of the right of participation in the estate of the bankrupt. The act does not require any such construction, and certainly the general interest of both debtor and creditor is opposed to any such interpretation.

The bankrupt act encourages all honest efforts of a debtor to pay his debts, and to give it any other construction would be to condemn the whole act as false and oppressive in theory and fact.

The clause in the twenty-second section, which provides that the creditor must prove "that the claim was not procured for the purpose of influencing the proceedings under this act," I was at first inclined to think prohibited the transfer of claims altogether after the commencement of proceedings, but upon further reflection I concluded that it did not relate to transfers after the filing of petition any more than before, and that it was not intended to interfere with ordinary transfers, but only such as were procured for the purpose of influencing the proceedings in bankruptcy.

And as the testimony fails to show that Henry procured these for any such purpose, I think his purchase is good.

The argument drawn from the form of proof, No. 22, I do not regard as of much force. Those "forms" are not prescribed in the act, and general rule 33 declares that the "forms" annexed "shall be observed and used with such alterations as may be necessary to suit the circumstances of any particular case."

It does not, therefore, follow, by any means, that if a creditor cannot make that particular deposition, that his claim is to be rejected. The "forms" may be altered to suit circumstances.

As the bankrupt owed these debts at the time of filing the petition, they were provable under the act (section 19) and will, therefore, be barred by his discharge.

Now, if no party can prove them by reason of such change of ownership, then they will be wiped out without any part being paid. I cannot yield my assent to such a construction of the bankrupt act in cases where the claims, as in this case, were bought in good faith.

I therefore hold that Mr. Henry, as the owner and holder of these notes and bills of exchange, may prove them as against the bankrupt's estate, notwithstanding he purchased them after the commencement of the bankruptcy proceedings.

I find that a like view has been taken of the act in Re Murdock [Case No. 9,939]; Ex parte Davenport [Id. 3,586]; and in Re Frank [Id. 5,050].

But this question is not raised for the first time under the present bankrupt act. It was presented under the act of 1800 [2 Stat. 19], and Justice Washington, in Humphries v. Blight's Assignees [Case No. 6,870], in deciding it says: "We have no doubt upon the right of the assignee of the note in this case, to prove the debt under the commission, and to receive a dividend. The certificate of the bankrupt would be a bar to a recovery. in an action by the present holder of the note against him. And wherein a certificate will be a bar, the right to prove the debt under the commission must be unquestionable."

The transfer of the note in that case was after the commission of bankruptcy had issued; after the proceedings were commenced, as in this case.

That case came before the court again, and the same learned judge said: "It would be unreasonable that such an assignee should not be allowed to prove, under the commission, since the debt would most certainly be barred by the certificate, being a debt due at the time of the bankruptcy, and such an one as might have been proven under the commission. It can produce injury to no person, as it can make no difference to the assignees whether the debt be proved as due to A, or to his assignee; and as they ought not to be injured. so they ought not to derive a benefit from this change, not of the debt, but of the creditor."

The act of 1867 provides, it is true, that a party shall forfeit his right to prove a debt, when he acts in violation of its provisions, but I have found in this case that Mr. Henry did not so purchase these claims, which brings this case within the rule laid down by the eminent judge who decided that case.

And that reasoning applies with equal force to a case arising under the act of 1867 as under the act of 1800. So that, following that decision as authority, it settles the questions involved here in favor of Mr. Henry's right to prove, and be allowed the amount of the notes and drafts, although purchased after the filing of the petition in bankruptcy.

But I do not think the accounts that he claims to own and prove are assigned to him

in a way to entitle him to prove them. He has no assignment of them, simply a receipt of payment, and if that was the transaction he might have a claim for money paid as against Strachan, but that cause of action would not accrue until the payment, which was after the commencement of bankruptcy proceedings, which would not be a debt provable under the act, nor be affected by the discharge.

This view excludes the account of M. E. Fuller & Co., $652.33; of Nichols, Shepherd & Co., $366.96; and that of E. P. Dickey, $91.53. The drafts of bankrupt drawn upon Henry in favor of Boal, Andrews & Cook, for $34.05, dated April 25, 1871, and in favor of Johnson, Murphy & Co., for $1,500, dated May 19, 1871, and accepted and paid by him, are not provable, as they were drawn and paid after the commencement of bankruptcy proceedings.

The bankrupt's liability to Henry arose upon his acceptance and payment of the drafts, and Mr. Henry is not, as the proof now stands, entitled to be subrogated to the rights of the creditors to whom the drafts were given. If he intended to have been, he should have taken an assignment of their claims.

The counsel for the opposing creditors contends that the debts should be proven as of the date of the adjudication; I am inclined to adopt that as the proper construction of the 19th section of the bankrupt act.

But the claims will, of course, draw interest, since then and up to the payment, at the agreed rates, where it was agreed upon, and when not, at the legal rate.

I therefore find and adjudge that there was due from the bankrupt to William T. Henry, on the 20th day of May, 1871, the day of the adjudication, the sum of $72,507.95, and order and direct the register to enter him in his minutes and list of creditors, as a creditor to that amount, and to so certify to the assignee in this case.