## LEIGHTON v. KENNEDY.

### (Circuit Court of Appeals, First Circuit. April 14, 1904.)

#### No. 502.

1. BANKRUPTCY—ASSIGNMENT OF CLAIMS—EFFECT.

Within four months prior to the filing of a petition praying that the person against whom the petition was brought should be adjudged a bankrupt, the alleged bankrupt had made a general assignment for the benefit of creditors to one M. M., prior to the filing of the petition, purchased the claims of 12 creditors, which were nonnegotiable choses in action, under such circumstances that the alleged bankrupt might have claimed that the purchases were in his interest. Afterwards, and a few days before the filing of the petition, M. assigned each of said claims to a stranger, with the purpose of keeping alive 12 different claims in the hands of 12 different supposed creditors, so that the same might be enumerated as outstanding creditors with reference to any such petition. *Held*, that the claims so purchased merged in M., so as to become a single claim in equity, or are to be regarded as extinguished; that, in either case, the several persons to whom the claims were assigned acquired no equities superior to those of M., as the claims were nonnegotiable choses in action; and that the attempt by M. to create the condition described with reference to enumeration of creditors was an attempt to defeat the scheme of the statutes in bankruptcy, and therefore, in any view, noneffectual.

2. SAME.

Within four months prior to the filing of a petition praying an adjudication in bankruptcy of the person against whom the petition was filed, the alleged bankrupt made an assignment for the benefit of creditors to M. M., within a few days prior to the filing of the petition, purchased with funds of the assigned estate several claims against the alleged bankrupt belonging to creditors who had not assented to the assignment; and thereafter, before the filing of the petition, M. executed formal assignments of each of said claims to a stranger, without receiving any consideration therefor. *Held*, that the claims, if not extinguished through the purchase by M., were by that purchase put under the control of the alleged bankrupt, who held the residuary interest in the assigned estate, and so continued, and therefore must be rejected in computing the enumeration of outstanding creditors with reference to such petition.

Appeal from the District Court of the United States for the District of Massachusetts.

129 F.—47

John J. Ryan (Pingree & Ryan, on the brief), for appellant.

Frederick P. Cabot (Hurlburt, Jones & Cabot, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. In this case the appellant, Leighton, was adjudicated a bankrupt by the District Court for the District of Massachusetts, and thereupon he seasonably appealed to us. The case turns on the construction, application, and force of the following provision in paragraph "b" of section 59 of the bankruptcy act approved on July 1, 1898, c. 541, 30 Stat. 561, 562 [U. S. Comp. St. 1901, p. 3445]:

"Three or more creditors who have provable claims against any person, which amount in the aggregate, in excess of the value of securities held by them, if any, to five hundred dollars or over, or if all of the creditors of such person are less than twelve in number, then one of such creditors whose claim equals such amount may file a petition to have him adjudged a bankrupt."

A single creditor (Kennedy), who is the appellee, filed on March 28, 1903, a petition in due form, praying that Leighton might be adjudged bankrupt. He alleged that Leighton's creditors were less than 12. Leighton answered, denying this allegation, and prayed that the petition be dismissed. On February 20, 1903, Leighton, being admittedly insolvent, made a general assignment for the benefit of his creditors to one Walter J. Martin. A portion of the creditors came into the assignment, the details as to which ones it is not necessary to state. Twelve of Leighton's creditors who had not come in, on March 12, 1903, assigned their claims to Martin, receiving in payment therefor checks signed by him as assignee. The assignments to Martin were in writing, and in form to him individually; that is, without describing him as assignee, or disclosing on their face anything to show that he obtained them other than in his individual capacity. It appears that at the time these assignments were taken Martin had on deposit to his credit as assignee a certain amount of cash, and on the same day borrowed other amounts, which were credited to him as assignee, and presumably added to his deposit as such. These sums were borrowed, as the case states, for the purpose of aiding him in making payments to the creditors. Subsequent to the petition in bankruptcy the larger portion of the sums so borrowed were paid by Martin by his checks as assignee, but this cannot be regarded as a material fact.

The case contains the following statements agreed to by the parties to the controversy:

"The twelve accounts assigned as aforesaid to Martin were, on March 24, 1903, assigned by said Martin to twelve different persons, who respectively paid to Martin for the several accounts the same amount that Martin had paid for the respective accounts."

"The purpose of Martin and his assignees in making and taking these assignments of March 24, 1903, from Martin, was to keep claims enough alive to prevent a single creditor from maintaining a creditor's petition in bankruptcy against said Albert Leighton, and to prevent these claims from merging in himself, and to exclude the possibility of his being counted as only one creditor in case of bankruptcy proceedings against said Leighton."

It will be noticed that these assignments from Martin were only four days before the petition in bankruptcy was filed. They were in writing; so that if, after the claims had merged in Martin, he could lawfully reassign them, and they were capable of being severed, each of the various persons to whom the assignments were made became, for ordinary purposes, a creditor of Leighton, not only in equity, but at law, as will be seen by the extract from the Massachusetts statutes which we will hereafter make. The parties further agreed as follows:

"Eight claims against said Leighton, aggregating less than $200, and being all but seven of the other claims against Leighton which had not assented in writing to the assignment, were assigned by the holders thereof, creditors of Martin, to different persons for a similar purpose, of which both assignors and assignees were cognizant; but the consideration therefor was furnished by checks drawn by Martin as assignee, under said assignment, on the said bank account hereinbefore described."

Also as follows:

"Unless the above-mentioned twelve claims assigned on March 24, 1903, by Martin, or unless the eight claims assigned for a similar purpose, the consideration for which was paid by Martin as aforesaid, are counted in determining the number of creditors, there were less than twelve creditors at the date of the filing of the bankruptcy petition."

As under an assignment for the benefit of creditors the assigning debtor retains the beneficial interest in the residue of the property, when there is any, and in equity controls it, and as the assignee under such a deed bears trust relations to the debtor as well as to the creditors, it follows that whatever may have been the form of the transactions which resulted in the assignments of various debts to Martin, or to the persons designated by him who paid no consideration therefor, it was at the option of the debtor, Leighton, to ratify Martin's transactions in these respects, and accept the benefit thereof. To the time when the petition in bankruptcy was filed Leighton had not repudiated them; so that, for this case, all the debts thus assigned must be held to have been extinguished by payments from his assets, or on his account. The only alternative would be to hold that Leighton even then retained the right of affirming or rejecting, thus leaving him at his option to play fast and loose with reference to proceedings in bankruptcy, which, of course, could not be permitted. Therefore, according to the settled practice in bankruptcy, those debts are not to be counted in computing the outstanding creditors with reference to the number required to unite in an involuntary petition. Bump's Bankruptcy (10th Ed.) 439. This, of course, would not prevent these creditors from surrendering, after an adjudication in bankruptcy, the cash received by them as unlawful preferences, and from proving their debts. Neither, according to the well-settled practice in bankruptcy (Bump's Bankruptcy [10th Ed.] 439), would it prevent them from uniting in an involuntary petition, and counting as creditors accordingly, unless the petition was based on preferences given them. These propositions together work out an equitable result; while, if preferred creditors should be counted against an involuntary petition, they could, by merely sitting still, give effect to preferences illegally received, and defeat the purposes of the bankruptcy statutes. We find nothing in the present legislation which con-

travenes these rules of practice, although they were settled under previous statutes. The decisions cited in behalf of Leighton for the most part fail to meet these points, and, if to any extent they do not so fail, they are not of sufficient authority to change the previous practice.

Of course, like all other purchasers of nonnegotiable choses in action, the parties who acquired the 12 claims from Martin took them subject to all equities, and therefore to this option on the part of the debtor. In this particular case this is emphasized because, in view of the fact that they and Martin united for the purpose stated in the record, they must be held cognizant of the true condition of affairs. Therefore, for fundamental reasons, these debts cannot be enumerated under paragraph "b" of section 59 of the act of July 1, 1898.

The eight claims which were, by Martin's procurement, assigned to different persons who paid no consideration therefor, are also subject to further observations which easily dispose of them. Unless regarded as discharged from the assigned assets of Leighton in the manner we have stated, they belonged in equity to Martin; and the interests of the several persons to whom they were nominally assigned were unsubstantial, and not cognizable in bankruptcy proceedings, which, as we have several times held, are governed by equitable rules. It is the settled practice in the United States in bankruptcy that choses in action which have been assigned before a petition is filed are to be proved by the assignee as being the substantial party in interest. Bump's Bankruptcy (10th Ed.) 638. It is clear, as ruled in Sandusky v. First National Bank, 23 Wall. 289, 23 L. Ed. 155, that a proceeding in bankruptcy, from the time of its commencement to its final settlement, is one suit. The rule is universal in all litigation except suits at law, whether in equity or admiralty, and therefore in bankruptcy, which is analogous to equity, that interveners come in in the names of the substantial owners of claims, whether they be the original holders or assignees. Consequently, so far as these eight claims are concerned, there was, at the time the petition in bankruptcy was filed, in the best view of the case for Leighton, only a single creditor.

In addition to this, after the purchase by Martin, the claims, if not extinguished, were under the control of Leighton, who had the residuary interest in the estate assigned to Martin, and in whose behalf the latter was subject to a trust, as we have already explained. The reasons why these claims should not count are therefore multiple; and in any view of the policy of the bankruptcy statutes, and of the necessity of an honest administration thereof free from improper control or influence, they must be rejected in computing the number of outstanding creditors under section 59b of the act of July 1, 1898, which we have already quoted.

With reference to these particular claims, we observe nothing in the transaction which could be said to clearly operate in violation of the policy of the Bankruptcy Statutes. If we could assume that they are to be regarded as outstanding debts, the condition was not changed by the assignments made in connection with them, because prior thereto there were eight creditors, and there was, therefore, no unlawful purpose contemplated in the endeavor to maintain that same number. As to the twelve claims, however, the condition was entirely dif-

ferent. Either on the assignments of these claims to Martin they were extinguished, as we have said, or they all merged in Martin, so that he became in equity a single creditor, and, under the Revised Laws of Massachusetts of 1902, c. 173, § 4, a single creditor at law. This reads as follows:

"The assignee of a non-negotiable legal chose in action which has been assigned in writing may maintain an action thereon in his own name."

The subsequent assignments by him constituted an attempt to create artificially a new condition for the specific purpose, assented to by all involved, of defeating the carefully prepared scheme of the bankruptcy statutes with reference to the subject-matter which this proceeding concerns. An attempt to create such a condition, and thus by indirect methods to defeat the scheme of the statute, is unlawful and void, and so clearly so that we need not elaborate the proposition. It is true that there is a class of cases, like In re Strachan, 3 Biss. 181, Fed. Cas. No. 13,519, where, as the result of an ineffectual effort to adjust the affairs of a debtor by voluntary agreement among creditors, the enumeration with reference to proceedings in bankruptcy has been disturbed; but those disclose an honest purpose which the law does not discourage. On the other hand, the present appeal exhibits in connection with the 12 claims no intention of bringing about a voluntary adjustment of Leighton's affairs, but only a purpose, by an artificial array of numbers, to bar the petitioner, Kennedy, from his statutory right, and so no purpose whatever except that of defeating the scheme of the statute. Therefore there is no basis for its approval by a judicial tribunal.

We do not forget that prior to the later statutes in reference to the jurisdiction of the Circuit Courts it was admissible for citizens of different states to acquire property by absolute title although the purpose thereof was to establish jurisdiction in the federal courts; nor do we forget that a gift made for a like purpose to South Dakota was accepted by the Supreme Court as vesting it with jurisdiction against North Carolina. South Dakota v. North Carolina, 192 U. S. 286, 24 Sup. Ct. 269, 48 L. Ed. ——. Neither do we forget that under the prior bankruptcy statutes it was held by at least one District Court that it was legitimate to purchase claims for the purpose of securing the statutory amount required for the bringing of an involuntary petition. In re Woodford and Chamberlain, 13 Nat. Bankr. R. 575, Fed. Cas. No. 17,972. But these attempts to invest courts with jurisdiction were not reprehensible in the sense in which the contrivance at bar was so, in that the latter looked to forcing the petitioner out of the bankruptcy courts, and to depriving him of the right which the statutes carefully sought to secure him; and it should be understood that we do not intend to cover by this decision anything except with regard to the precise facts before us.

The decree of the District Court is affirmed, and the appellee will recover his costs of appeal.