In re BLOUNT.

(District Court, E. D. Arkansas, E. D.   January 6, 1906.)

1. BANKRUPTCY—CONSTRUCTION OF ACT—SCHEME TO DEFEAT PROCEEDINGS.

The main object of the bankruptcy act is to secure an equal distribution of the assets of an insolvent among all his creditors and prevent preferences, and it is the duty of the courts to carry this purpose into effect to the extent which the language of the act justifies. Schemes and artifices to evade the letter and spirit of the law will not be tolerated.

2. SAME.

An insolvent having more than 12 creditors cannot defeat bankruptcy proceedings against him by transferring his property for the benefit of some of his creditors leaving less than three unprovided for, but leaving the preferred creditors actually unpaid for the purpose of requiring them to be counted so that those remaining will be insufficient in number to maintain a petition in bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 59b, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3445].

3. SAME—INVOLUNTARY PROCEEDINGS—NUMBER OF CREDITORS.

An insolvent sold and transferred all of his property to one creditor, under an agreement that the purchaser should pay all of the seller's other creditors, except one. The creditors so provided for were notified of the arrangement and expressed no dissent. Under the law of the state the purchaser became absolutely bound for the payment of their claims in full. Held, that they must be deemed to have assented to the transfer for their benefit, and that under Bankr. Act July 1, 1898, c. 541, § 56b, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443], which provides that creditors holding security shall not be counted in computing the number of creditors of a bankrupt unless their claims exceed the value of the securities, they should not be counted, and the single creditor left unprovided for, having a claim exceeding $500, could alone maintain a petition in bankruptcy.

4. SAME.

In determining the number of creditors of an alleged bankrupt for the purposes of Bankr. Act July 1, 1898, c. 541, § 59b. 30 Stat. [U. S. Comp. St. 1901, p. 3445], persons to whom at the time of the filing of the petition he owed small bills, contracted after his commission of an act of bankruptcy, for current family necessaries or similar purposes, which are customarily paid monthly or within a short time, and which were for the most part in fact so paid shortly afterward, should not be counted as creditors to defeat proceedings instituted by a bona fide creditor, whose claim it was the evident purpose of the debtor to defeat by a preferential transfer of his property.

5. SAME—PREFERRED CREDITORS.

A creditor will not be considered as preferred because he holds as security for his debt a life insurance policy having no surrender value.

In Bankruptcy. Involuntary proceedings. On exceptions to master's report.

S. D. Johnston filed a petition to have the above-named bankrupt adjudicated as an involuntary bankrupt, alleging that he was the only creditor of the bankrupt, and setting up a conveyance of all his property for the benefit of his other creditors. The only question put in issue by the bankrupt was a denial that Johnston constituted the only creditor, but alleging that there were more than 12 creditors. No jury having been demanded, the matter was referred to M. L. Stephenson, Esq., one of the referees in bankruptcy, as special master, with directions to take proofs, make findings of facts, and state his conclusions of law.

The referee made the following report:

"The undersigned, on the order of reference hereto attached, respectfully reports:

"That on the 7th of October he caused the petitioners and respondent and M. H. Ford to appear before him, and examined the said Blount and Ford, whose testimony taken in shorthand and reduced to longhand by E. R. Crum is attached to this report as Exhibit A. That thereafter, on the 18th day of October, he caused notice to be given to all the creditors, disclosed by the answer and testimony of Blount and Ford, as required by section 59d (Act July 1, 1898, c. 541, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3445]), by posting to their address as given by respondent, a copy of which notice is attached as Exhibit B. None of the creditors named have joined in the petition nor have taken any other steps to establish their claims. On the 27th of November, upon due notice, I attended at Marianna, Ark., and examined various parties relative to the subject, which evidence is attached as Exhibit C.

"From the examination of Blount and Ford, on the 7th of October it transpired that Blount on the 31st day of March, 1905, sold the entire business, including stock, book accounts, etc., to M. H. Ford for $4,845.53. Blount was indebted to Ford in the sum of $2,600, which was to be taken as part of the purchase price, and for the balance Ford was to assume and pay Blount's creditors, a list of whom with the amounts due them was made out, and formed a part of the transaction, the total amount being $2,245.53. From the evidence of Ford it appears that some doubt was entertained by him of the value of some of the outstanding accounts, and it was agreed between himself and Blount that the latter should give Ford his note for $500, with the understanding that, should collections on certain of the accounts exceed Ford's estimate of their value, Blount was to receive credit on his note for such excess. From the list of Blount's creditors filed with Ford's testimony, and from the evidence of both Ford and Blount, it would appear to have been the purpose of both to pay all the creditors of Blount except the petitioner Johnston. It is conceded that the sale to Ford on March 31st was, under the facts and circumstances attending it, an act of bankruptcy. It is admittedly a preference in favor of all the creditors excepting the petitioner Johnston. It was a payment of Ford's debt by the sale and delivery of the property, and, as to the other creditors named, he held the goods as trustee until they were paid. Ford says in his testimony (page 5) that he assumed to pay the creditors named in the list and wrote them all, and they all understood that he was responsible for it. At the hearing on the 7th of October I required Ford to file a list of accounts owed by Blount on March 31, 1905, and remaining unpaid on October 13, 1905; and also required Blount to file a list of his creditors remaining unpaid on the 18th of July, that being the date of the filing of Johnston's petition herein. I attach these lists as Exhibits D and E.

"From the evidence taken on the 27th of November at Marianna it appears that many of the creditors named in the reports of Blount and Ford (Exhibits D and E) have been paid since the filing of the petition, and in one or two instances the alleged creditor denies creditorship. It is insisted on the part of Blount that at the time of the filing of the petition (July 18th) by Johnston he had more than 12 unpaid creditors, and that it requires at least three creditors to join in a petition of involuntary bankruptcy; and they attack the validity of the two other petitioners who joined with Johnston. Whether these are bona fide claims against Blount, as I view the case, can make no difference in the result. It seems to be clear that all creditors accepting the preference in their favor, resulting from the sale to Ford and his agreement to pay their claims, cannot join in a petition in involuntary bankruptcy, without first surrendering their preference. In re Miner et al. (D. C.) 104 Fed. 520; In re Gillette et al. (D. C.) 104 Fed. 769.

"There is no proof from the preferred creditors themselves that they agreed to accept Ford in lieu of Blount; but I find the following as very persuasive circumstances that they did so: First. Ford wrote all of them, and those from whom he received replies agreed to it. (Ford's testimony, pp. 5, 6.) Second. To the notice sent out by me (Exhibit B) no responses have been received, and no action taken toward joining in the petition. Third.

Of the debts outstanding and unpaid October 13, 1905, as given in Ford's response (Exhibit D), Brown, Cross, Dupuy, Lee County Bank, and Lesser and Mixon have been paid. Gist denies that he is a creditor. Blount is a nephew of W. F. Blount and therefore not eligible under the law to join. Fourth. The allegations of Blount in his answer that Johnston, upon being apprised of the sale to Ford, 'proceeded by persuasion and every other inducement which he could originate to persuade other creditors than himself to join in the petition for involuntary bankruptcy against respondent. At the time there were some 35 or more creditors, but none of them, so far as respondent is advised, would consent to join in the petition with the said Johnston.'

"By the sale to Ford, all the debts of Blount, except that of the petitioner Johnston, were to be paid by Ford. With a few trifling exceptions they have been paid by him. Under the law a creditor agreeing to the preference cannot join in the petition for involuntary bankruptcy unless he surrenders the preference. From the foregoing reasons, it is a fair presumption that all creditors did agree to the preference. If any in fact dissented they were notified of the pendency of the proceedings, as required by section 59d of the bankrupt act, and have neglected to avail themselves of the law. As a matter of law it is immaterial in this case at what time it is made to appear that there are more than 12 creditors and consequently a necessity for at least three petitioning creditors. The agreement of Ford on the 31st of March, 1905, constituted the creditors assenting to it preferred creditors, and therefore not to be counted. In re Miner (D. C.) 104 Fed. 520. The fact that most of them have accepted payment from Ford is conclusive that they at least are assenting creditors, and the further fact that those remaining have failed to join, since notice, is sufficient in my opinion to put upon them the burden of proving themselves dissentients. The date at which the number of creditors is to be counted under section 59 is that on which a preference appears to have been made. In this case it is March 31st. The fact that many of the debts have been paid since the filing of the petition is simply evidence of the fact that such creditors have accepted the preference, and, if it is at all necessary that the petition should show the fact, it will be considered as amended, or a supplemental petition can be filed as of course, setting out the fact. In re Miller (D. C.) 104 Fed. 764.

"Any other conclusion would result in making use of the bankrupt law, the primary object of which is to prevent preferences, as a means for securing a preference. All creditors except Johnston are secured to be paid by Ford. Nearly all have been paid in fact. They have no motive for rejecting their money, in full, and joining in a proceeding, which on the face of the answer, would force a scaling of their debts. To count all of any part of these preferred creditors against him in computing the number, under section 59, would inevitably result in enabling one set of creditors to get their claims paid in full and in utterly defeating others. This in my opinion is not the law. Besides, I find as a fact that there are less than 12 creditors (bona fide) now remaining unpaid, and that at the date of the filing of the petition there were less than that number, who were eligible to join, without giving up their preference.

"I therefore find that the said W. F. Blount should be adjudged a bankrupt on the petition of said S. D. Johnston."

Objections were made by the bankrupt to these findings of facts, as well as his conclusions of law.

P. D. McCulloch and Jacob Fink, for petitioner.
W. F. Compton and H. F. Roleson, for bankrupt.

TRIEBER, District Judge (after stating the facts). The main object of the bankruptcy act is to secure an equal distribution of the assets of an insolvent among all his creditors and prevent preferences. Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 449, 21 Sup. Ct. 906, 45 L. Ed. 1171. The duty of the courts is to carry this intention of Congress into effect to the extent which the language of

the act justifies. Mere schemes and artifices to avoid the letter and spirit of the law will not be tolerated. In Leighton v. Kennedy, 129 Fed. 737, 64 C. C. A. 265, a scheme was resorted to for the purpose of keeping alive the claims of 12 creditors so as to prevent proceedings of involuntary bankruptcy being instituted by 1 creditor, but the District Judge, and upon appeal the United States Circuit Court of Appeals for the First Circuit, refused to sanction such attempted frauds on the law, and sustained the petitioning creditors. Judge Putnam, in delivering the opinion of the Appellate Court in that case, aptly said:

"An attempt to create such a condition, and thus by indirect methods to defeat the scheme of the statute, is unlawful and void, and so clearly so that we need not elaborate the proposition." 129 Fed. 741, 64 C. C. A. 269.

Section 59b of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3445]) provides:

"Three or more creditors who have provable claims against any person which amount in the aggregate, in excess of the value of securities held by them, if any, to $500.00 or over; or if all of the creditors of such person are less than twelve in number, then one of such creditors whose claim equals such amount may file a petition to have him adjudged a bankrupt."

That the bankrupt committed an act of bankruptcy is admitted, but it is strenuously insisted that there are more than 12 creditors, and for this reason it requires at least 3 creditors to file a petition to adjudicate one a bankrupt.

The finding of the referee on that point, and it is based solely on the evidence of the bankrupt and the beneficiary of the conveyance made by the bankrupt, is:

"That Blount on the 31st day of March, 1905, sold the entire business, including stock, book accounts, etc., to M. H. Ford for $4,845.53. Blount was indebted to Ford in the sum of $2,600, which was to be taken as part of the purchase price, and for the balance Ford was to assume and pay Blount's creditors, a list of whom, with the amounts due them, was made out, and formed a part of the transaction; the total amount being $2,245.53. * * * From the list of Blount's creditors filed with Ford's testimony, and from the evidence of both Ford and Blount, it would appear to have been the purpose of both to pay all the creditors of Blount except the petitioner Johnston."

If the contention of counsel for the bankrupt is to be sustained, an insolvent debtor owing debts to 12 or more creditors can assign or convey his property for the benefit of some of his creditors, leaving some unprovided, provided the creditors thus discriminated against do not exceed two; and the bankruptcy courts are powerless to prevent this wrong, because they say that until the preferred creditors are actually paid out of the proceeds of the insolvent's estate they are still his creditors. The reasoning of the referee, as well as the authorities cited by him, fully meet that contention and are approved by the court. When Mr. Ford, in consideration of the transfer to him of all the assets of the bankrupt, assumed the payment of. all of. the bankrupt's debts except that of the petitioning creditor Johnston, he not only became a trustee for the benefit of those preferred creditors, but under the laws of the state of Arkansas, as construed by its highest court, he became absolutely liable to them for their claims. Patton v. Adkins, 42 Ark. 197; Dismukes v. Halpern, 47 Ark. 317, 1 S. W. 554. And this rule of law established by the Supreme Court of the state is

conclusive on the national courts in actions arising in that state. Willard v. Wood, 164 U. S. 502, 17 Sup. Ct. 176, 41 L. Ed. 531.

The fact that none of the creditors thus preferred have consented to release the bankrupt does not change the result, for the same reason that a creditor whose debt has been secured by a mortgage or pledge can still hold the debtor liable and maintain an action against him without resorting to the security. The fact that none of the creditors has consented to this arrangement, or had consented thereto at the time these proceedings were instituted (for the referee's findings of fact show that since then most of them have been paid in full by Mr. Ford), is immaterial, for, in the absence of any dissent on their part, the transaction being for their benefit, the law presumes an acceptance. Ft. Leavenworth R. R. Co. v. Lowe, 114 U. S. 525, 528, 5 Sup. Ct. 995, 29 L. Ed. 264; Ewing v. Walker, 60 Ark. 503, 31 S. W. 45; Breathwit v. Bank of Fordyce, 60 Ark. 26, 28 S. W. 511, and authorities there cited.

That by virtue of this conveyance to Ford and his covenant to pay these creditors their debts in full their claims are secured for the full amount is too clear for argument, and as under the bankruptcy act, creditors can only join in a proceeding of this kind for claims "in excess of the value of the securities held by them," there are no other creditors than Johnston who could join in this proceeding, even if inclined to do so. But it is insisted that there are 16 other creditors besides Johnston to whom Blount was indebted on the 18th of July, 1905, the day of the filing of the petition, and who were not secured by the Ford transfer, or in any other manner. The names of these creditors are fully set out in the response to the petition, and it is unnecessary to copy the list in this opinion. Of these claims it was admitted at the hearing that the indebtedness alleged to be due to C. J. Cross, one of the 17 persons named, had been paid off before July, thus leaving 16 creditors, including the petitioning creditor Johnston, and therefore that three creditors must join in the petition.

In order to understand fully the claims of some of these parties, which will be hereafter more fully set forth, it is proper to state that, after the sale made by Blount to Ford, the business was carried on in the same manner as if there had been no change, except that the firm name was changed from W. F. Blount to M. H. Ford Grocery Company, although there was no corporation. Blount remained in charge of the business as manager, Ford being the sheriff of the county, and for this reason unable to give the business any attention. All transactions connected with the business were attended by Mr. Blount, and a number of those creditors named by Blount in his response to the petition state that they did not know whose business it was, whether Blount's or Ford's, and that all orders for the business sent by Blount were charged to him. Among the debts claimed to be owing by Blount and set forth in his response are the following:

G. R. Leary is alleged to have been a creditor on July 18th for the sum of $12.15. Of this amount $10 was a cash loan made to Blount for a customer of the store; Ford being absent, and the money taken in that day having been deposited in the bank. The money was

charged on the books of Ford to the customer and paid back by the store. This clearly was not an indebtedness of Blount, but rather of the Ford store. The balance due consisted of 85 cents for laundry incurred during that month and $1.30 for newspaper subscriptions for two months, all of which were paid by Blount the first part of August, as it was customary in that city to have all bills of that kind, including groceries, dry goods, drug, laundry, newspaper, ice, and other neccessaries for the use of the family, charged during the month and paid upon presentation of the bill the first part of the succeeding month. The indebtedness due David & Simms was $1.50 for a baby cap bought by Mrs. Blount for their baby on July 7th and paid the first part of August. The account of James R. Roane was $16.50, of which $1.50 was for guarantying the hiring of a horse and buggy for a drummer, who settled for it with the store, and the other $15 was a verbal guaranty for debts due the livery stable keeper from customers of the store. These debts being liabilities of the store, of which Mr. Ford was then the owner, cannot be treated as liabilities of Blount; but, aside from that fact, as the guaranty of these debts of other persons was not in writing, but only verbal, it is void under the statute of frauds of this state, and upon objections by the trustee in bankruptcy, if the respondent is adjudicated a bankrupt, could not be proven against the estate. The claim of Chandler & Harrington, druggists, amounting to $1.50, was for some prescriptions for the family of Blount incurred July 7th and settled in the usual course of business in August. The bill of Dr. Deaderick was for $2, less a discount of 40 cents. This was for a visit and prescription on the night of July 17 to one Thomas, an employé of the Ford store, and was paid by the store out of his wages. The claim of J. N. Schichtl is for 10 cents for a bridle bit bought by respondent on the 12th of July and paid as usual in August. The claim of H. Mixon is alleged to be for the rent of the dwelling from the 1st day of July until the 18th of that month, the date of the filing of the petition. The evidence shows that, under the contract, the rent was due on the first day of each succeeding month, and was always promptly paid by Blount. The rent for June had been paid the first part of July, and the July rent was paid in August. The claim of Julius Benham was for ice delivered during July and charged as delivered and payable on the first of the next succeeding month. Up to the 18th of July the bill for ice delivered amounted to $2.40. He continued to deliver during July after these proceedings were instituted, and the first part of August collected the bill for the entire month. Dr. Hall's bill is for a small doctor's bill due from a colored boy and verbally assumed by Blount, in violation of the statute of frauds. Mixon & McClintock's bill is 30 cents for some millet seed bought for use in the house in July and paid upon presentation of the bill in August.

To treat the holders of such claims as creditors to be considered in determining the number existing for the purpose of preventing a bona fide creditor to institute proceedings of this nature, when an insolvent conveys all of his property, with the avowed intention of

preferring all of his creditors except one, would be a violation, if not of the letter, certainly of the spirit, of the bankrupt law, and cannot be tolerated. In fact, if the contention of the respondent is to be sustained, the involuntary feature of the bankruptcy act would be a dead letter, for any insolvent who desired to prefer some of his creditors, leaving out one or two, could always manage to have as many as twenty creditors by purchasing for his personal use and that of his family small things amounting to sums ranging, as in the case at bar, from 10 cents to $2, and having them charged. By paying them the succeeding month, after he had made some small purchases, to be charged again, it would always leave a number of creditors ready to be used whenever proceedings of this kind are instituted against him. It is hardly reasonable to suppose that creditors of that kind, who feel secure in having their bills promptly paid, would want to incur the risk of losing a good customer in order to join a bona fide creditor to institute proceedings in bankruptcy. All laws must be given a reasonable construction, and for this reason the claims hereinbefore recited must be disregarded in determining the number of the creditors of Mr. Blount at the time these proceedings were instituted, and if this is done it clearly appears that there were less than 12 creditors. The fact that most of these creditors could have maintained an action and recovered judgment against Blount cannot change the rule, for a creditor whose debt is fully secured may maintain an action and recover judgment without surrendering his security, but he cannot prove his claim in bankruptcy proceedings unless he surrenders the same. The maxim "De minimis non curat lex" may also be properly applied.

The finding of the court is that on July 18, 1905, the day these proceedings were instituted, there were less than 12 creditors of the respondent who had provable claims, within the meaning of the bankruptcy act relative to involuntary proceedings.

It is further claimed that Johnston, the petitioning creditor, is a preferred creditor by reason of the fact that he is the holder of a life insurance policy assigned to him by Blount as security. It is claimed that the policy had a cash surrender value of $260 at the time these proceedings were instituted. The policy was issued on the 10th day of February, 1903, and shows that it has a surrender value of $260, but only at the end of the third year. As the three years will not end until the 10th of February, 1906, it follows as of course that it had no surrender value on July 18, 1905, but only a speculative value depending upon the death of the assured. As stated by this court in Gould, trustee, v. New York Life Insurance Co. et al. 132 Fed. 927, a life policy, being at the time of the adjudication of bankruptcy of no actual value to the estate, would not pass to the trustee as an asset.

An order will be entered adjudicating Mr. Blount as a bankrupt, in conformity with the prayer of the petition.