STROHEIM et al. v. LEWIS F. PERRY & WHITNEY CO. et al.

(Circuit Court of Appeals, First Circuit. January 4, 1910.)

No. 830.

1. BANKRUPTCY (§ 76*)—INVOLUNTARY PETITION—PETITIONING CREDITORS—
ASSIGNED CLAIMS.

Where the owner of certain notes against an alleged bankrupt assigned
one of them without substantial consideration to S., in order to enable
her brother to use S. as a petitioning creditor on an involuntary bank-
ruptcy petition, and B. came into possession of another note from the
same source, under the same circumstances, and for the same reason, nei-
ther was qualified to join as petitioning creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 99, 100; Dec.
Dig. § 76.*]

2. BANKRUPTCY (§ 76*) — INVOLUNTARY PETITION — ASSIGNING CREDITORS —
QUALIFICATION—JOINDER IN ASSIGNMENT.

Where a creditor of an alleged involuntary bankrupt had assented to an
assignment for the benefit of creditors, and there was no evidence that it
was induced to act by fraud, it was not qualified to join as petitioning
creditor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 99, 100; Dec.
Dig. § 76.*]

3. BANKRUPTCY (§ 77*)—INVOLUNTARY PETITION—CREDITORS—QUALIFICATIONS
—ASSIGNEES.

Since an involuntary bankruptcy petition relates to the date of its com-
mencement, an intervening creditor, who became such by taking an as-
signed claim after the petition was filed, could not be counted in determin-
ing whether enough creditors had joined to sustain the petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 102; Dec.
Dig. § 77.*]

Appeal from the District Court of the United States for the District
of Massachusetts.

In the matter of the Lewis F. Perry & Whitney Company, alleged
bankrupt. From a decree denying the involuntary petition of Salo J.
Stroheim and others for adjudication (172 Fed. 745), certain petition-
ers appeal. Affirmed.

George W. Anderson (Joseph B. Jacobs and Philip W. Jacobs, on
the brief), for appellants.

Lee M. Friedman (Charles E. Haywood, on the brief), for appel-
lees McGaw and others.

Reginald L. Robbins (Lauriston L. Scaife, on the brief), for ap-
pellee Dennison Manufacturing Co.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, Dis-
trict Judge.

See, also, 172 Fed. 744, 752.

PUTNAM, Circuit Judge. This is a case of an involuntary peti-
tion in bankruptcy against the Lewis F. Perry & Whitney Company.
The petition was dismissed by the District Court on the ground that
not sufficient creditors joined therein to satisfy the requirement of the
statute. Thereupon the petitioners, or some of them, appealed to us.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r indexes

As the case stood, the statute required that three creditors should unite in the petition. Apparently three did so unite at the outset, Stroheim & Romann, one Skelly, and one Beaumont. The answer denied that Skelly and Beaumont were bona fide creditors. Subsequently, under the statute, one Dodman, Perkins & Co., Incorporated, the Dennison Manufacturing Company, and one Leahy intervened as additional creditors. On this appeal the respondents below classified these alleged creditors as follows: They do not question Stroheim & Romann or Dodman, leaving one other creditor to be found. They maintain that Skelly and Beaumont merely collusively accepted nominal transfers of parts of a claim for the purpose of enabling one creditor to appear as three. In other words, they maintain that Skelly and Beaumont really came in under cover of Stroheim & Romann. The Dennison Manufacturing Company and Perkins & Co., Incorporated, they maintain are estopped, having assented to the assignment for the benefit of creditors which is charged in the petition as the sole act of bankruptcy. To Leahy they make several objections, one of which only we find it necessary to consider.

Putting on the claims of Skelly and Beaumont the best face possible for the petitioning creditors, the facts are as follows: The petition was filed on September 23, 1908. On September 10, 1908, a sister of Stroheim held several notes of the debtor. At that time she transferred to Skelly one note without any substantial consideration, for the sole purpose of enabling her brother's copartnership to secure a sufficient number of creditors to proceed with the bankruptcy petition. Beaumont came into possession of another note under the same circumstances and for the same reason. Evidently they were not creditors when they joined the petition, because evidently the whole transaction was purely colorable, and the notes still belonged to Stroheim's sister. Therefore they could not lawfully make the required oath to the involuntary petition. We concur fully with the conclusion of the learned judge of the District Court so far as these two signatures are concerned.

The assignment for the benefit of creditors was assented to by the clerk of the Dennison Manufacturing Company in its name and for its behalf. The proofs show that the clerk had done this on some several previous occasions without any objection from the corporation, and with its implied approval. In addition to this, the Dennison Manufacturing Company made attempts to withdraw from the assignment, giving various reasons why it might lawfully so do. In all this, however, they made no attempt to repudiate the authority of its clerk to execute the assignment. Therefore, so far as that is concerned, it is evident that the original execution of the assignment must stand. In these proceedings by the Dennison Manufacturing Company an effort was made to bring the case within Canner v. Webster Tapper Co. (decided by us on March 11, 1909) 168 Fed. 519, 93 C. C. A. 541. There we permitted a creditor who had become a party to a general assignment to withdraw his assent thereto on the ground that he had been induced to assent by fraud. There is not a particle of evidence in this case of any existing fraud preceding or contemporaneous with

the act of the Dennison Manufacturing Company in executing the assignment; and the latter remark applies to Perkins & Co., Incorporated, who also executed the assignment, and afterwards undertook to repudiate it.

This leaves only Leahy. For the purpose of securing a sufficient number of creditors, Leahy purchased a claim against the alleged bankrupts from another creditor, who owned it when the involuntary petition was filed on September 23, 1908. Leahy offered to intervene on February 25, 1909. The statutes in bankruptcy fix no time with reference to these interventions; yet, of course, as proceedings in bankruptcy are of an equitable nature, the court might well apply to them the ordinary rules of laches. But the steps which brought the original claim from the owner of it to Leahy took place after the petition was filed. It is said that Leahy never in fact owned the claim, and, therefore, stood like Skelly and Beaumont; but we can safely rest our conclusion on broader grounds. The general rule is that every legal proceeding of an adverse character relates to the date at which it is commenced. There are some exceptions to this; but they are strictly exceptions, supported by either some statutory provision or some settled practice of a peculiar nature. Neither of those things exist here; and most substantial reasons lead to the ordinary result, because nothing can be more injurious to a person or a corporation of the classes subject to proceedings in bankruptcy than to have affairs held up by a continuous series of doubtful events, following one another. It is necessary for every person transacting business and requiring credit to be able to say at some fixed period whether or not he is his own master; and the entire frame of the bankruptcy statutes is intended to help in this direction, and secure prompt action. The opinion filed by Judge Brown in behalf of this court in Moulton v. Coburn (decided on July 6, 1904) 131 Fed. 201, 66 C. C. A. 90, is in this line. There it was said that the court found nothing in the bankruptcy statutes to contravene the ordinary rule of law that the allegations of a declaration, bill, or petition are to be disposed of as of the time of filing or beginning the suit. The opinion continues that the court finds nothing in the statutes "to indicate that creditors whose debts are created after the filing of the petition are entitled to join." Indeed, while we do not criticise the motives of the parties to this proceeding, nor undertake to discredit their purpose to obtain an adjudication in bankruptcy against a debtor whose estate they evidently thought should be disposed of in accordance with the statutes relating thereto, we observe that the whole of the case presented to us is in contravention of the broad principles stated by us in Leighton v. Kennedy (decided on April 14, 1904) 129 Fed. 737, 741, 64 C. C. A. 265, 269. There we speak of what we found to be an attempt to create artificially a new condition for the specific purpose of defeating the carefully prepared scheme of the bankruptcy statutes, and we said:

"An attempt to create such a condition, and thus by indirect methods to defeat the scheme of the statutes, is unlawful and void, and so clearly so that we need not elaborate the proposition."

Therefore, not only for the specific reasons which we have detailed, but also in view of the broad propositions in Leighton v. Kennedy, we must hold that the conclusions of the District Court were correct.

The judgment of the District Court is affirmed, and the appellees recover their costs of appeal.