### EMERINE et al. v. TARAULT et al.

#### (Circuit Court of Appeals, Sixth Circuit. January 5, 1915.)

#### No. 2513.

1. BANKRUPTCY ⬥⟾77—INVOLUNTARY PETITION—"CREDITOR."
    Purchase of a claim bought after the filing of an involuntary bankruptcy petition to create an additional creditor does not vest the purchaser with the character of a "creditor," so as to entitle him to be counted in making up the statutory number necessary to maintain an involuntary petition.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 55, 101–103, 105, 106; Dec. Dig. ⬥⟾77.
    For other definitions, see Words and Phrases, First and Second Series, Creditor.]

2. BANKRUPTCY ⬥⟾91—INVOLUNTARY PETITION—CREDITORS—PURCHASE OF MORTGAGE.
    Where a judgment creditor of an alleged bankrupt ascertained that there was a mortgage on certain of the alleged bankrupt's real property, and 21 days before filing the bankruptcy petition such creditor's son purchased the mortgage after consulting with his father, evidence *held* insufficient to show that such purchase was not in his father's interest, so as to entitle him to occupy the position of an independent creditor, to entitle him to be counted in ascertaining whether the requisite number of creditors had joined in the involuntary petition.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 137–139; Dec. Dig. ⬥⟾91.]

3. BANKRUPTCY ⬥⟾77—INVOLUNTARY PETITION—SECURED CREDITORS.
    Under Bankr. Act 1898 (Act July 1, 1898, c. 541, 30 Stat. 560 [Comp. St. 1913, § 9640]) § 56b, providing that claims which are secured or have priority shall not be counted in computing either the number of creditors or the amount of their claims, unless the amount of such claims exceeds the values of the securities, and then only for such excess, secured creditors can be counted as involuntary petitioning creditors only to the extent of their provable claims in excess of the value of the security.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 55, 101–103, 105, 106; Dec. Dig. ⬥⟾77.]

4. BANKRUPTCY ⬥⟾330—CLAIMS—SECURED CLAIMS—PROOF—ALLOWANCE.
    A distinction is to be drawn between proving a claim under Bankr. Act, § 57a (Comp. St. 1913, § 9641), and its allowance under section 57c, resulting in the right of a creditor to prove a secured claim when the ultimate necessity for its allowance appears reasonable, even though it may turn out to be unnecessary, because the security is adequate to pay it.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 517, 519, 521; Dec. Dig. ⬥⟾330.]

---

⬥⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

Involuntary bankruptcy petition of Joseph Tarault. From an order dismissing the petition, and denying an adjudication, Andrew Emerine, Sr., and others appeal. Affirmed.

B. F. James, of Bowling Green, Ohio, for appellants.

H. E. King and Rathbun Fuller, both of Toledo, Ohio, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. This is an appeal from an order dismissing the petition and intervening petitions for adjudication of bankruptcy. The original petition was filed March 1, 1913, by Andrew Emerine, Sr., as a creditor by judgment for upwards of $12,000. The act of bankruptcy charged was an alleged preferential and fraudulent conveyance by the debtor to his daughter of a farm of about 193 acres. The bankrupt answered, denying insolvency, as well as the alleged act of bankruptcy, and making sufficient showing that his creditors exceeded 12 in number. Thereupon three intervening creditors' petitions were filed: (1) That of Andrew Emerine, Jr., a son of the original petitioning creditor; (2) that of Alonzo Emerine, likewise a son of the original petitioning creditor, on account of a mortgage upon the premises whose conveyance constituted the alleged act of bankruptcy; (3) that of Robert G. Young, receiver, representing as such a claim against Tarault.

Previous to final hearing, the court on its own motion struck from the files the petition of Andrew Emerine, Jr. Upon final hearing, without a jury, Tarault's insolvency was admitted. The court, while intimating doubts as to the bona fides of the claim of Alonzo Emerine, found it unnecessary to determine that question, as it held that the assailed conveyance was not an act of bankruptcy.

[1] In the view we take of the case, it is unnecessary to consider the question whether the conveyance attacked was preferential or fraudulent, for the fact of three competent petitioning creditors does not satisfactorily appear. The claim of Andrew Emerine, Jr., was characterized by the District Court as for "a notary fee incurred in a verification of pleadings in the case out of which such judgment grew, and which was assigned by the notary since the beginning of this case for the purpose of creating a new creditor." We find nothing in the record disturbing the correctness of this statement of fact. The court properly refused to sanction such proceeding; for, passing the question of the notary's power to assign his right to receive the notary's fee, which was part of a judgment, not in his favor, but in favor of the party to whom the notarial service was rendered, we think it clear that the purchaser of a claim bought after the filing of the petition in bankruptcy, and for the purpose of creating an additional creditor, cannot be counted in making up the statutory number. Loveland on Bankruptcy (4th Ed.) p. 383; Stroheim v. Perry & Whitney Co. (C. C. A. 1) 175 Fed. 52, 99 C. C. A. 68.

[2] The claim of Alonzo Emerine stands upon a different footing, in that the mortgage was actually assigned to him previous to the bankruptcy proceedings. But the bona fides of his ownership of the mortgage was directly put in issue on the hearing below. In the opinion of the district judge on final hearing it is said that Andrew Emerine "is at the head of a private bank and is an extremely aged and very feeble old man, whose business is transacted largely by his son Alonzo." It appeared that Andrew Emerine, who held the judgment against Tarault, on learning of the latter's conveyance to his daughter, informed his son Alonzo, and that the latter, acting on his father's behalf and at his request, took out execution upon the judgment and had levy made thereunder upon the farm in question. In looking up the title to the farm, the mortgage in question was discovered of record as a first lien thereon. It was bought, and assigned to Alonzo Emerine February 8, 1913, 21 days before the bankruptcy petition was filed. It is fairly apparent that the mortgage was bought solely in the father's interest, and, presumably, at least as a supposed aid or protection to the judgment levy. The testimony of Alonzo Emerine, taken May 2d upon the application for receivership, and before the intervening petitions were filed, naturally implies, we think, that the purchase was made for the father. In testifying to his arrangement at the bank, on February 8th, for the purchase of the mortgage, he said he was there for his father. To the court's question whether he bought the note and mortgage for his father he answered:

"Yes. Well, I was buying it. I do not know that it was suggested by my father."

The District Judge, who personally heard all the testimony given on both hearings, says in his opinion upon final hearing that:

"The testimony of Alonzo Emerine, taken on the first occasion, tends to suggest his holding of the note and mortgage upon which his intervening petition is based is in the interest of his father, the original petitioning creditor."

Upon final hearing, when the bona fides of his holding was in issue, to the question of his counsel, "I will ask you if you are the owner of a $4,000 mortgage purchased by you from the Oak Harbor State Bank?" he answered, "I am;" and to the question, "Are you still the owner of that?" he answered, "Yes, sir." On cross-examination, he said that with respect to the levy he acted at his father's direction and in his behalf; that "then I counseled with him, talked with him about buying this mortgage"; that he told his father about the result of the examination of the records and about the mortgage, talked it over with his father, and then (at a later date) went to the bank and bought the mortgage. In view of his relations to his father and to the transaction in question, his previous testimony, the issue later raised as to the bona fides of his status as creditor, and the entire history of the case, we think a burden practically rested upon him to show definitely that his holding of the mortgage, when bankruptcy intervened, was not in his father's interest. This burden was apparently recognized, for the second question asked him upon final hearing was the one we have first quoted above. We think his testimony does not fairly sustain the

burden imposed, and it is not helped out by the other testimony. It is significant that he nowhere states in terms that he bought the mortgage with his own money; and his testimony, taken altogether, is not necessarily inconsistent with an original purchase with his father's money, and a taking of the legal title in the son's name, to be held for the father's benefit, nor with the son's acquisition of a completed ownership by arrangement subsequent to the bankruptcy proceedings. Either of these situations would be fatal to the right to count the son as a creditor. Stroheim v. Perry & Whitney Co., supra; In re Tribelhorn (C. C. A. 2) 137 Fed. 3, 69 C. C. A. 601; Leighton v. Kennedy (C. C. A. 1) 129 Fed. 737, 740, 64 C. C. A. 265. In the circumstances stated, we do not feel justified in counting Alonzo Emerine as a creditor, as representing at the institution of bankruptcy an interest separate and distinct from that of his father, the original petitioning creditor.

[3] Another aspect of the case leads to the same result. Section 56b of the Bankruptcy Act provides that claims which are secured or have priority shall not "be counted in computing either the number of creditors or the amount of their claims, unless the amount of such claims exceeds the value of such securities, and then only for such excess." Accordingly secured creditors may be counted as petitioning creditors to the extent of their provable claims in excess of the value of the securities held, but only to such extent. Loveland on Bankruptcy (4th Ed.) §§ 186, 187, and 282; Remington on Bankruptcy, vol. 1, p. 175, § 220; In re Sampter (C. C. A. 2) 170 Fed. 938, 96 C. C. A. 98; In re Quinn (C. C. A. 8) 165 Fed. 144, 91 C. C. A. 178; In re Smith (D. C.) 176 Fed. 434. The intervening petition of Alonzo Emerine did not waive the right to the mortgage security, but expressly reserved it. The only allegation respecting the value of the mortgage security is this:

"That the said 197 acres of land above set forth as security, as this intervening petitioner is informed, may not be sufficient to secure said claim, for the reason of the defect in and clouds upon the title to said land securing said mortgage; and it may be necessary for intervening petitioner to not only prove but have allowed in this court any deficiency existing in his favor against the said Joseph Tarault, after the said land has been subjected to payment of the amount due intervening petitioner herein upon said mortgage."

[4] There is apparently a distinction between the proving of a claim under section 57a of the Bankruptcy Act and its allowance under section 57c, resulting in the right to prove a secured claim when the ultimate necessity for its allowance appears reasonably possible, even though it may turn out to be unnecessary because the security proves adequate to pay the debt in full. See In re Hornstein (D. C.) 122 Fed. 266, 277; In re Stansell, Fed. Cas. No. 13,293; In re Ashland Steel Co. (C. C. A. 6) 168 Fed. 679, 681, 94 C. C. A. 165; Courtney v. Fidelity Trust Co., 219 Fed. 57, 134 C. C. A. 595, decided by this court December 18, 1914. The answer of the alleged bankrupt to the intervening petition in question denied, among other things, that "said intervening petitioner has any claim against him, and that he is a creditor of his," and alleged that at the time of the filing of the petition the intervener "was not entitled to demand from him the sum of $4,000 on

the mortgage described, or any other sum." Whether or not the answer sufficiently raised an issue over the adequacy of the mortgage security, there is plausible ground for thinking that the intervener so accepted it, for he put in on the hearing testimony of the existence of controversy over the title of the mortgaged premises, the purpose of which it is difficult to understand unless intended to prove allegations in the petition respecting the security's sufficiency. But the testimony came in substance only to this: That while, according to the record, Mrs. Tarault owned a life estate and her husband the fee of the land, subject to that estate and the mortgage mentioned, Mrs. Tarault claimed that equitably she owned the fee, instead of merely a life estate. The mortgage, however, was given by "Joseph Tarault and Maria Tarault, husband and wife, in consideration of four thousand dollars to us paid," etc. The grant and the warranty of title are made in terms by both mortgagors, and the mortgage note was signed by both. So far as shown by the record, the mortgage was a first lien against the premises, regardless of Mr. and Mrs. Tarault's rights as between themselves; and we have found nothing suggesting that Mrs. Tarault claims that her rights are superior to the mortgage. If the issue as to the sufficiency of the security is to be treated as existing and tried out, it is plain that the mortgage-debt was adequately secured, and Alonzo Emerine thus not entitled to rank as a petitioning creditor, for there is no suggestion in the petition or elsewhere that the farm is not worth enough to pay the mortgage debt; on the contrary, the brief of petitioning creditors, in discussing the conveyance constituting the alleged act of bankruptcy, states that the farm was worth "perhaps" $18,000. But assuming that this issue was not actually raised or tried, and that the existence of a title superior to that held by the Taraults is not here foreclosed, the ultimate result is the same; for if the mortgaged premises were not sufficient security for the mortgage debt, the conveyance could not have been an act of bankruptcy, and but one act of bankruptcy was alleged. Excluding the two sons, there remained but two petitioning creditors.

The judgment of the District Court is accordingly affirmed, with costs.