### ZEIGLER v. HALLAHAN.

(Circuit Court of Appeals, Third Circuit. June 13, 1904.)

#### No. 25.

1. PRINCIPAL AND SURETY—DISCHARGE OF SURETY—ALTERATION OF CONTRACT.
   Where defendant became surety for the performance by a tenant of the covenants of a lease for 10 years, which bound the tenant to keep and pay rent for the premises, and, at the expiration of the term, deliver them in good condition, a modification of the contract before the tenant took possession, without the knowledge or consent of defendant, by the insertion of a provision that, in the event of the total or partial destruction of the premises by fire or other casualty, rendering the same untenantable, the lease from such time should become void and should be surrendered to the lessor, constituted a material alteration, which operated to discharge defendant from liability.

2. SAME—EFFECT OF ALTERATION.
   In determining whether a surety is discharged by an alteration of the principal contract without his consent, the question is not whether the change was or could be prejudicial to him, but whether it effected a material alteration of the agreement to which his undertaking of suretyship related; and, if it did, he is discharged, even though the change may have been beneficial to him.

3. SAME—CONTRACT OF SURETYSHIP—RECITAL OF CONSIDERATION.
   The rule as to the discharge of a surety by an alteration of the principal contract without his consent is not affected by the fact that his undertaking recites that it was made by him for a valuable consideration.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 126 Fed. 788.

Wm. Jay Turner and Samuel Dickson, for plaintiff in error.

John G. Johnson, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. The decision of the court below was based upon a case stated as follows:

"The plaintiff, Mary Helen Zeigler, on April 2, 1901, made, executed, and delivered to one Moses H. Lichten an indenture of lease for the premises

---

¶ 2. See Principal and Surety, vol. 40, Cent. Dig. § 178.

known and numbered as No. 50 North Eighth street, in the city of Philadelphia, of which indenture a copy is hereto attached, marked 'Exhibit A,' and made a part hereof, and the defendant, Peter T. Hallahan, by writing, became surety for the fulfillment of all the obligations of said Moses H. Lichten under and by virtue of said indenture of lease; said contract of suretyship being endorsed on Exhibit A. On or about April 29, 1901, an agreement supplemental to said indenture of lease, without consultation with or approval of the defendant, was executed by and between the plaintiff and the said Moses H. Lichten, as follows:

"'It is hereby mutually agreed between M. Helen Zeigler and Moses H. Lichten, the parties to the foregoing indenture of lease, that the following shall become part and parcel thereof with like effect, as if the same were embodied in the foregoing agreement.

"'It is hereby further covenanted and agreed in the event of the total or partial destruction of the within demised premises, rendering the same untenantable by reason of fire or other casualty, this lease shall from such time become absolutely null and void and the within lease shall be surrendered by the lessee to the lessor.

"'In witness whereof the parties hereunto set their hands and seals this 29th day of April, A. D. 1901.

"'Mary Helen Zeigler.  [Seal.]<br>
"'Moses H. Lichten.  [Seal.]'

"Said Moses H. Lichten violated the covenants and conditions of said lease, by subletting the premises thereby let and demised, and by assigning said lease without the consent of the plaintiff, and by cutting a passageway through the south party wall of said premises into the adjoining premises, in consequence whereof, on January 4, 1902, the plaintiff, by virtue of the warrant of attorney to confess judgment in ejectment contained in said lease, entered a judgment in ejectment against said Moses H. Lichten in the court of common pleas, No. 3, for the county of Philadelphia, of December term, 1901, No. 2,180, and issued a writ of habere facias possessionem against Moses H. Lichten for the recovery of possession of said premises. Said Moses H. Lichten thereupon filed his affidavit, of which a copy is hereto attached, and obtained a rule in said court of common pleas to show cause why such judgment in ejectment should not be opened, and said Moses H. Lichten let into a defense, all proceedings to stay. To said affidavit of Moses H. Lichten the plaintiff filed her answer as required by the rules of said court of common pleas, and thereafter depositions were taken by the said Moses H. Lichten and the plaintiff. On March 31, 1902, said court of common pleas discharged said rule. On April 19, 1902, the said Moses H. Lichten caused to be issued a certiorari from the Supreme Court of Pennsylvania to said court of common pleas, but did not file any bond as required by the laws of the commonwealth of Pennsylvania for the purpose of making said certiorari act as a supersedeas. On April 30, 1902, the plaintiff issued an alias writ of habere facias possessionem under the aforesaid judgment in ejectment, and, by virtue of said writ, recovered possession of said premises, which until said date remained in the possession of said Lichten. On May 8, 1902, the record in said action of ejectment was duly certified to the Supreme Court of Pennsylvania, and on February 10, 1903, the said record was returned to said court of common pleas, with a remittitur certifying that the judgment of said court of common pleas was affirmed. The rent for said premises reserved in said indenture of lease was paid by said Moses H. Lichten up to January 1, 1902, On January 6, 1902, the agents of said Moses H. Lichten mailed to the plaintiff's attorney a check for the month's rent, in advance, of said premises, due January 1, 1902; but said check was returned to said agents of Lichten on January 9, 1902, accompanied by the following letter:

"'Philadelphia, Jan. 9th, 1902.

"'Dear Sirs: I beg to return herewith check to the order of Mary Helen Zeigler for $500, sent her on January 6th, in settlement of one month rent for premises No. 50 North Eighth street, due in advance January first.

"'I have advised Miss Zeigler not to accept this check in view of the fact that she has cancelled the lease with Mr. Lichten and has begun an action in

ejectment for the purpose of obtaining possession of the premises. You are fully advised regarding the reasons for this course of procedure. Will you be good enough to acknowledge receipt of check enclosed, and oblige,

" 'Yours very truly,                              Wm. Jay Turner.

" 'To Mess. A. J. & L. J. Bamberger.'

"Between January 1, 1902, and April 30, 1902, the plaintiff received no compensation for the use of said premises. The yearly rental value of said premises is agreed to be $6,185.

"Should the court be of opinion that the defendant, Peter T. Hallahan, is indebted to the plaintiff, M. Helen Zeigler, by virtue of the contract of suretyship above set forth, under the foregoing facts, then judgment shall be entered for said plaintiff in the sum of $2,047.51, with interest thereon from April 30, 1902, or for so much less than that amount as the court shall determine shall be entered, if it shall be of opinion that any allowance shall be made by reason of the tender of $500 set forth in the statement of facts. Should the court be of opinion that the defendant, Peter T. Hallahan, is not indebted to the plaintiff, M. Helen Zeigler, by virtue of the contract of suretyship above set forth, under the foregoing facts, then judgment shall be entered for the defendant. The right to sue forth a writ of error to the United States Circuit Court of Appeals for the Third Circuit for the purpose of having a review of the judgment entered in accordance with the opinion of the court is hereby expressly reserved unto both parties in this proceeding."

The lease need not be set out in full. We may accept the statement made in the brief of the plaintiff in error that:

"The conditions of this lease that are of importance in the present case are that Lichten should keep the premises, and, at the expiration of his term, deliver them up in good order; that he should not assign his lease, nor underlet the premises, without the written consent of the plaintiff in error; and that, if he did assign his lease or underlet the premises without such consent, or fail to keep the other conditions of the lease, the plaintiff in error might terminate the lease and recover possession of the premises."

The contract of suretyship was as follows:

"For the valuable consideration heretofore received, I, Peter T. Hallahan, of the City of Philadelphia, for myself, my heirs, executors and administrators do hereby covenant and agree to and with the above named lessor, her heirs and assigns, that if the foregoing agreement entered into by and between the lessor and the lessee therein named, shall not be well and faithfully performed on the part of the lessee for and during the term of three years, eight months and fifteen days from the first day of May, A. D. 1901, that then the said agreement shall be promptly performed by me and that I will pay all damages arising of any breach of said agreement. And, further, that if the said lessee, his heirs, executors or administrators or any of them, shall fail to pay the rent reserved in the aforesaid agreement punctually, at the days and times the same shall fall due, that then immediate recourse may be had and made to me by demand, suit or otherwise.

"And I do further agree that all the remedies, actions and right to any judgment or judgments by said lease, yielded and reserved to the lessor therein named, and all conditions and covenants in the said lease relative thereto, and the waiver of all rights by the said lessee, including the waiver of the benefit of the law exempting property from levy and sale under execution, shall be deemed and held applicable to and enforceable against me with the same effect as if here fully inserted and mentioned.

"And also I do further agree that my liability under the aforesaid agreement of Lease between the lessor and the lessee shall continue according to the terms thereof so long as the liability of the said lessee shall continue for and during the term above mentioned.

"Witness my hand and seal the Second day of April, A. D. 1901.

"H. F. Turner.                          P. T. Hallahan.   [L. S.]"

The Circuit Court entered judgment for the defendant, and, to maintain the averment that the judgment should have been for the plain-

tiff, two propositions have been submitted to this court, which will be separately considered:

1. It is said that "the defendant in error was not only not prejudiced or damaged, but could not possibly have been prejudiced or damaged, by the execution or operation of the supplemental agreement." This assertion is not unquestionable, but it need not be questioned, for, in our opinion, the true subject of inquiry in such a case as this is not as to whether the change made in the principal contract without the surety's assent was or could be prejudicial to him, but is as to whether it effected a material alteration of the agreement to which his undertaking of suretyship related. If it did, as in this case is indubitable, he was relieved from liability, and for the obvious reason that the identical contract to which alone his obligation attached had ceased to exist. In Bonar v. McDonald, 3 H. L. Cas. 226–238, the rule was stated to be "that any variance in the agreement to which the surety has subscribed, which is made without the surety's knowledge or consent, which may prejudice him, or which may amount to a substitution of a new agreement for a former agreement, even though the original agreement may, notwithstanding such variance, be substantially performed, will discharge the surety." In Reese v. U. S., 9 Wall. 14, 19 L. Ed. 541, Reese was surety in a recognizance conditioned that one Limantour "should personally appear at the next regular term of the circuit court to be held in the city of San Francisco, and at any subsequent term to be thereafter held in that city." At the next subsequent term of that court the district attorney moved for and obtained a postponement of Limantour's trial, to which postponement he assented. The court below held that in this there was no ground for exemption of the bail from liability on the recognizance; but the Supreme Court, in an opinion delivered by Mr. Justice Field, reversing the judgment, said:

"The provision for his appearance at any subsequent term had reference to such subsequent term as might follow in regular succession in the course of business of the court. * * * The stipulation to postpone * * * was inconsistent with the condition of the recognizance. * * * The stipulation, in other words, superseded the condition of the recognizance. * * * The stipulation, made without their consent or knowledge, between the principal and the government, has changed the character of the obligation. It has released him from the obligation with which they covenanted he should comply, and substituted another in its place. * * * And the law upon these matters is perfectly well settled. Any change in the contract on which they are sureties, made by the principal parties to it without their assent, discharges them, and for obvious reasons. When the change is made they are not bound by the contract in its original form, for that has ceased to exist. They are not bound by the contract in its altered form, for to that they have never assented. Nor does it matter how trivial the change, or even that it may be of advantage to the sureties. They have a right to stand upon the very terms of their undertaking."

In Cross v. Allen, 141 U. S. 537, 12 Sup. Ct. 67, 35 L. Ed. 843, the court stated the rule, of which it was "not unmindful," to be "that any material change in the contract on which he is a surety, made by the principal parties to it, without his assent, discharges the surety, even though he may be benefited by such change; the reason being that he has not assented to the contract in its altered form, and has a right to stand upon the very terms of his undertaking." There is nothing in the opinion of the Supreme Court in Roach v. Summers, 20 Wall.

169, 22 L. Ed. 252, which, when read with its context, does not appear to be in harmony with the other deliverances of that court. It was there said, it is true, that a certain arrangement "could not work a discharge of the sureties, unless it placed them in a different position from that which they occupied before it was made"; but that, in saying this, it was understood that the arrangement referred to would have placed them in a different position if it had changed the principal contract, is plainly shown by the observation which almost immediately folfollows, that "it [the arrangement] was no alteration of the original contract, and had no effect upon it." The decisions of the Pennsylvania courts are in accord with those of the Supreme Court of the United States. The rule in that state was declared, in Nesbitt v. Turner, 155 Pa. 431, 26 Atl. 750, to be:

"When the principal party modifies his contract, it is fatal to its validity, as against the surety, whose assent has not been obtained, even if it be for his benefit, or if it do him no harm."

And in Bensinger v. Wren, 100 Pa. 505, it was said that:

"Any alteration of a contract by the principal parties, without the assent of the surety, is fatal to its validity, as against the surety. Even if he sustains no injury by the change, or if it be for his benefit, he has a right to stand upon the very terms of his obligation, and is bound no further. Any unauthorized variation in an agreement which a surety has signed, that may prejudice him, or may substitute an agreement different from that which he came into, discharges him. Miller v. Stewart, 9 Wheat. 680 [6 L. Ed. 189]; Smith v. United States, 2 Wall. 219 [17 L. Ed. 788]."

2. It has been, however, further contended that "the contract of suretyship shows on its face that the general law, by which such contracts are to be construed strictly in favor of the surety, has no application to this case"; and Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242, has been cited in support of this contention. But it does not sustain it. The court there said that it had been—

"Argued with much persuasiveness that this rule of strictissimi juris, though universally accepted as applicable to the undertaking of an ordinary guarantor, who is usually moved to lend his signature by motives of friendship or expectation of reciprocity, and without pecuniary considerations, has no application to the guaranty companies, recently created, which undertake, upon the payment of a stipulated compensation, and as a strictly business enterprise, to indemnify or insure the obligee in the bond against any failure of the obligor to perform his contract."

But the court declined to express an opinion upon this subject, and remarked that:

"It is at least open to doubt, however, whether any relaxation of the rule should be permitted, as between the obligee and the guarantor, which may have signed the guaranty in reliance upon the rule of strictissimi juris, and with the understanding that it is entitled to the ordinary protection accorded to guarantors against changes in the contract or extensions of the time of payment."

Hence it is evident that it was not really decided that the rule in question should be relaxed, even as against a company which, as matter of business and for compensation, assumes obligations like that upon which this action was founded; and we are not prepared to say that such companies are any less entitled to rely upon the protection which that rule affords than is the "ordinary guarantor," who lends his signa-

ture without pecuniary consideration. But even if guaranty companies were excluded from that protection, it would not follow that it should be denied to the surety in this case. He certainly is not a guaranty company, nor does it appear that he undertakes as a matter of business to become surety; and there is nothing to indicate that in this particular instance he received any compensation for doing so, unless it be the formal mention of "valuable consideration" in the instrument itself, and this, in our opinion, should not, for the present purpose, be regarded as proof that he was in fact compensated. Clearly, as it seems to us, the question discussed, but not decided, in Guaranty Co. v. Brick Co., has no application to such a state of facts as is disclosed by the record before us.

The judgment of the Circuit Court is affirmed.

For opinion below, see 127 Fed. 736.

¶ 1. See Principal and Surety, vol. 40, Cent. Dig. § 284.