Sullivan,    }
Nov. 7, 1906. }

SHACKETT *v.* BICKFORD.

In an action for deceit in the sale of personalty, the fraudulent character of the defendant's misrepresentation of material facts is established by proof that it was made under suspicion that it might be false.

CASE, for deceit in the sale of a horse. Trial by jury and verdict for the plaintiff. Transferred from the November term, 1905, of the superior court by. *Chamberlin,* J., on the defendant's exceptions to the denial of motions for a nonsuit and a verdict in his favor and to certain instructions set forth in the opinion.

*Jesse M. Barton,* for the plaintiff.

*Henry F. Hollis,* for the defendant.

BINGHAM, J. The important question in this case arises on the defendant's exception to the charge of the court to the jury. The action was deceit in the sale of a horse, and the ground upon which the trial proceeded was that the defendant knew his representations were false. The court charged the jury " that it was enough, upon the question of the defendant's knowledge, if he knew or if he suspected that the representations were not true "; in other words, that suspicion by the maker that his representations are false is the legal equivalent of knowledge of their falsity, and fraudulent.

What will constitute fraud in such an action has recently been considered by the English courts. The leading case upon the

subject is *Derry* v. *Peek*, 14 App. Cas. 337, decided in the house of lords in 1889. The complainant in that case charged the defendants with knowingly making false representations. It was found in the court of first instance that the representations had been honestly made, believing them to be true ; and the court of appeal (37 Ch. Div. 541) held that notwithstanding this fact the representations must be taken to be fraudulent, because the defendants had no reasonable ground for that belief. The question, therefore, which was presented for the consideration of the house of lords, when the case came before that body in 14 App. Cas. 337, was whether a statement honestly made and believed to be true should be treated as fraudulent because those who made it had no reasonable ground for entertaining that belief. In the house of lords the decision of the court of appeal was reversed, and it was held, in conformity with the universally recognized rule, that an action of deceit is based upon fraud; that an action for negligent misrepresentation, as distinguished from fraudulent misrepresentation, could not be maintained ; that want of reasonable ground for believing a representation to be true might be evidence of fraud, if the circumstances indicated such recklessness or negligent disregard for the truth as to be incompatible with the idea of honesty, but that even gross negligence, in the absence of dishonesty, did not of itself amount to fraud; that notwithstanding a court or jury might find that the speaker had no reasonable ground for believing his representations were true, he may nevertheless have honestly entertained such belief, and consequently that fraud could not be predicated upon such a finding. Lord *Herschell*, who delivered the leading judgment in the case, said ( *p.* 374) : " I think the authorities establish the following propositions : First, in order to sustain an action of deceit there must be proof of fraud, and nothing short of that will suffice. Secondly, fraud is proved when it is shown that a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false. Although I have treated the second and third as distinct cases, I think the third is but an instance of the second ; for one who makes a statement under such circumstances can have no real belief in the truth of what he states. To prevent a false statement being fraudulent, there must, I think, always be an honest belief in its truth. And this probably covers the whole ground ; for one who knowingly alleges that which is false has obviously no such honest belief. Thirdly, if fraud be proved, the motive of the person guilty of it is immaterial. It matters not that there was no intention to cheat or injure the person to whom the statement was made."

In *Angus* v. *Clifford*, [1891] 2 Ch. 449, 465, 466, *Lindley*, L. J.,

in commenting upon this statement of Lord *Herschell*, said : " You may have . . . a false statement made, but without the matter being present to your mind, and made carelessly ; and if that is the fact, that is not fraud, but carelessness, for which an action will not lie. . . . The passages about knowledge—knowingly making it, and making a statement without believing its truth—are based upon the supposition that the matter was really before the mind of the person making the statement ; and if the evidence is that he never really intended to mislead, that he did not see the effect, or dream that the effect of what he was saying could mislead, and that that particular part of what he was saying was not present to his mind at all, that I should say is proof of carelessness rather than of fraud. I base my judgment . . . on the . . . ground that . . . an action of this kind cannot be supported without proof of fraud, an intention to deceive, and that it is not sufficient that there is blundering carelessness, however gross, unless there is willful recklessness, by which I mean willfully shutting one's eyes, which is of course fraud."

In *Le Lievre* v. *Gould*, [1893] 1 Q. B. 491, 498, Lord *Esher*, M. R., states : "A charge of fraud . . . against a man . . . cannot be maintained in any court unless it is shown that he had a wicked mind. . . . If a man tells a willful falsehood, with the intention that it shall be acted upon by the person to whom he tells it, his mind is plainly wicked, and he must be said to be acting fraudulently. Again, a man must be said to have a fraudulent mind if he recklessly makes a statement intending it to be acted upon, and not caring whether it be true or false. I do not hesitate to say that a man who thus acts must have a wicked mind." And *Bowen*, L. J., in the same case says (*pp.* 500, 501) : " But his mind is wicked, not because he is negligent, but because he is dishonest in not caring about the truth of his statement. In the first case it is the knowledge of the falsehood, in the second it is the wicked indifference, which constitutes the fraud. There seems to have been some sort of an idea that . . . whether the man had made the representation not knowing and not caring whether his statement was true or false, the expression ' not caring ' had something to do with his not taking care. But that expression did not mean not taking care to find out whether the statement was true or false ; it meant not caring in the man's own heart and conscience whether it was true or false, and that would be wicked indifference and recklessness."

It is apparent from the views expressed by the judges in these cases that to establish fraud you must prove a dishonest mental state or condition of mind on the part of the speaker with reference to the truthfulness of his statement ; that when he makes a

statement of fact intending it to be relied upon, he of necessity affirms his belief in its truth (*Smith* v. *Chadwick*, 9 App. Cas. 187, 203; *Angus* v. *Clifford, supra,* 470); that if his statement was untrue and he knew it, or he made it without belief in its truth, or with a conscious indifference, not caring whether it was true or false, the wickedness of his mind is manifest and the fraudulent character of his act established.

Applying these principles to this case, it would seem to follow that when the defendant, with a view to effecting the sale, stated to the plaintiff that the horse was safe and just what he wanted, he thereby affirmed his belief in the truthfulness of his statement; and it being found that the horse was vicious, and that the defendant suspected that his statement was false, that his want of belief or conscious disregard for the truth or falsity of his statement was established; for a person who suspects that his statement is false does not entertain an honest belief that it is true, or is consciously and wickedly indifferent to its truth or falsity.

The conclusion here reached is in harmony with the decisions in this state and with the great weight of authority elsewhere. *Mahurin* v. *Harding*, 28 N. H. 128; *Hanson* v. *Edgerly*, 29 N. H. 343; *Pettigrew* v. *Chellis*, 41 N. H. 95; *Springfield* v. *Drake*, 58 N. H. 19; *Rowell* v. *Chase*, 61 N. H. 135; *Stewart* v. *Stearns*, 63 N. H. 99; *Spead* v. *Tomlinson*, 73 N. H. 46, 61; *Pearson* v. *Howe*, 1 Allen 207; *Litchfield* v. *Hutchinson*, 117 Mass. 195; *Cole* v. *Cassidy*, 138 Mass. 437; *Andrews* v. *Jackson*, 168 Mass. 266; *Salisbury* v. *Howe*, 87 N. Y. 128; *Hadcock* v. *Osmer*, 153 N. Y. 604, 609; *Cummings* v. *Cass*, 52 N. J. Law 77; *Lamberton* v. *Dunham*, 165 Pa. St. 129; *McKown* v. *Furgason*, 47 Ia. 637; 1 Big. Fr. 509, 511, 513. In *Mahurin* v. *Harding, supra,* the court approved a charge to the jury that "if the affirmation [of the defendants] was known, or believed, or suspected by them to be false, and the event proved that it was so, it should be deemed fraudulent," and stated that the terms used to describe the *scienter* were "expressions of equivalent import." With this view we are content.

The defendant's motions for a nonsuit and verdict were properly denied. The evidence was sufficient to warrant the jury in finding that the representations were fraudulent.

*Exceptions overruled.*

All concurred.