## MYRON M. NAVISON SHOE CO., Inc., v. LANE SHOE CO.

Circuit Court of Appeals, First Circuit. December 23, 1929.

No. 2383.

Mark M. Horblit (of Horblit & Wasserman) and Benjamin Goldman, both of Boston, Mass., for appellant.

Lee M. Friedman (of Friedman, Atherton, King & Turner), of Boston, Mass., for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an appeal from a decree of the District Court for Massachusetts adjudging the appellant, Myron M. Navison Shoe Company, Inc., a

bankrupt on the involuntary petition of a single creditor, the Lane Shoe Company. The petition was filed November 10, 1928, and alleged that all of the creditors of the Navison Shoe Company, Inc., "are less than twelve in number." The only act of bankruptcy alleged and relied upon by the petitioner was a general assignment for the benefit of creditors made July 13, 1928, by the Navison Shoe Company, Inc., to Mark M. Horblit, as assignee or trustee. The answer to the petition was filed November 22, 1928. In it the making of the general assignment was admitted. It specifically denied the allegation of the petition that the creditors "are less than twelve in number"; averred that on the date of the filing of the petition the number of creditors were in truth and in fact twelve or more in number; and annexed thereto a list under oath of such creditors, exclusive of those who had previously assented to the general assignment. The answer also averred that the allegation of the petition as to the number of creditors (setting out the facts) was false, and was fraudulently inserted in the petition, with the purpose of circumventing the provisions of the Bankruptcy Act, and that the petitioner did not come into court with clean hands.

November 27, 1928, the petition and answer were sent to a special master to ascertain and report the facts. The hearings before him began January 16, 1929. He found, among other things, that it was admitted that on July 13, 1928, the Navison Shoe Company, Inc., made a general assignment of its property for the equal benefit of its creditors, and that, prior to filing the petition, four creditors having claims amounting to $71,857.42 assented to the assignment; that these creditors were the Green Bell Shoe Company, whose claim was $60,721.52, the Lion Shoe Company, whose claim was $8,610.90, the Beacon Trust Company, $2,500, and the Richmond Press, $25. The petitioning creditor, the Lane Shoe Company, had a claim of $41,109.72. It did not assent to the assignment.

Among the twenty-nine creditors outstanding on November 10, 1928, when the petition was filed, and who had not assented to the assignment, it was found that there were eighteen who then held provable claims; that they were original creditors, whose respective claims had been incurred prior to November 10, 1928; that each of these eighteen claims arose in the regular course of business, were duly entered in the ledger accounts of the company, and each was a valid provable claim on November 10, 1928.

As to these eighteen claims, the master ruled and found that only one of them could be counted for the purpose of determining the number of outstanding claims, for the reason that, after the filing of the petition, Joseph Navison purchased, or caused to be purchased, seventeen of these claims, and took assignments to himself of twelve of them and to his nominees the remaining five, viz. to Sylvia M. Navison two claims, and to Harry Lewis, William Sullivan, and Max Leibson one each; that the twelve claims assigned to Joseph Navison were paid for by him by checks drawn on his own personal bank account; that the other five were paid for by Sylvia, who had no financial interest in the business of the Navison Shoe Company, Inc., by checks drawn by her on her personal bank account; that ten of the seventeen claims were assigned after November 10, 1928, and on or before November 22, 1928, the date of the filing of the answer; and that the other seven were assigned thereafter and on or before November 30, 1928; and that these claims were procured so that intervening petitions could not be filed.

Of the remaining eleven claims, of the twenty-nine that had not assented to the assignment, the master ruled that only seven of them could be counted in determining the number of outstanding claims; that four of the eleven, to wit, the claims of Horblit & Wasserman, H. E. Thompson, the Klous Electric Company, and of Joseph Navison, should be excluded from the count; that the claim of Horblit & Wasserman, a firm of lawyers, of which Mr. Mark M. Horblit, the assignee or trustee under the general assignment, was a member, and which firm were the attorneys for the Navison Shoe Company, Inc., could not be counted, because it was for legal services rendered the Navison Shoe Company, Inc., the alleged bankrupt; that the claim of H. C. Thompson, an attorney, could not be counted, because it was for legal services (and he states that "there was evidence that after the petition was filed it had been bought by one of the Navisons," but he does not find that it had been); that the claim of Klous Electric Company could not be counted, although outstanding on the date of the filing of the petition, for the reason that on the 28th of January, 1929, one Schindler purchased the claim, and, although the master states "there was no evidence as to and in whose behalf Schindler acted," he made the inference that "it was purchased on behalf of the alleged bankrupt or of Joseph Navison," and therefore could not be counted; and that the claim of Joseph Navison consisted of

the claims of two creditors, the Selwell Shoe Form Company and the Klein Shoe Store, aggregating $107.25, which he purchased and had assigned to him, prior to November 10, 1928, the date of filing the petition, and could not be counted.

The reason given by the master for excluding the seventeen claims assigned to Joseph Navison or his nominees, subsequent to the filing of the petition, and the two claims of $107.25 assigned to him prior to the filing of the petition, was that Navison was the beneficial owner of all of the stock of the Navison Shoe Company, Inc., the legal title to which was in the name of an employee in that company, and, he having purchased or caused to be purchased these nineteen claims, the Navison Shoe Company, Inc., the alleged bankrupt, was estopped.

With reference to the matter set up in the defendant's answer charging that the allegation of the petition that the number of creditors was less than twelve was knowingly false and fraudulent, the master found that, just before the general assignment was made, the Navison Shoe Company, Inc., and its larger creditors had a conference to see if its affairs could not be adjusted, and that, "at that time a representative of the Lane Shoe Company examined the books of the company [the appellant], looking over the accounts payable"; that on or about July 14, 1928, the day following the making of the assignment, the assignee caused a letter to be sent to the creditors of the Navison Shoe Company, Inc., including the Lane Shoe Company, reading as follows:

"Dear Sirs: You are hereby notified that Myron M. Navison Shoe Co., Inc., has executed to our Mr. Horblit a deed of trust, which provides for the collection and conversion into cash of the assets conveyed thereby, and the distribution of the same among the creditors. Our Mr. Horblit has accepted the trust.

"There are about thirty creditors of the corporation, and several of them have already signified their intention to assent to the deed of trust. * * *

"The creditors are requested to sign and return the enclosed assent to the trustee, together with a statement of account. With the cooperation of the creditors a speedy and economical administration may be expected.

"Very truly yours,
"Horblit & Wasserman."

The master further found that about July 19, 1928, the Lane Shoe Company brought a suit in equity against the Navison Shoe Company, Inc., and others, in the Massachusetts Superior Court, "to reach and apply the property conveyed under the trust"; that, at preliminary hearings in the equity suit, counsel for the Navison Shoe Company, Inc., stated that only four creditors had assented to the assignment or deed of trust; and that on November 6, 1928, just four days prior to the filing of the petition, in answer to interrogatory 49, filed in the equity suit, there was furnished to counsel of the Lane Shoe Company an answer under oath made by one of the defendants, in which, among other things, the affiant stated: "As to the list of creditors [of the Navison Shoe Company, Inc.] there were in all on July 13, 1928, about thirty creditors."

But, having made these preliminary findings of fact upon this question, the master failed to find whether the Lane Shoe Company, on November 10, 1928, when it filed its petition in bankruptcy, in which it alleged that the creditors of the Navison Shoe Company, Inc., were less than twelve, did so knowing the allegation was false, or did so recklessly, not caring whether the allegation, which it affirmed as of its own knowledge to be true, was true or false, and that its conduct was fraudulent, if the allegation was false. He did, however, find that counsel for the Lane Shoe Company "was told at these several times, and prior to the bankruptcy proceedings, of the fact that there were thirty creditors," but he further states: "I also find as a fact that there is no evidence that he believed that there were this number of creditors." It was wholly immaterial what counsel for the Lane Shoe Company believed. The material question was what the Lane Shoe Company knew, or should have known and believed, on the date it filed its petition seeking the adjudication of the Navison Shoe Company, Inc., as a bankrupt, having previously received the information that it had.

Having made these findings and rulings excluding all of the claims, except seven, from the count, the master finally ruled "that there were, at the time of the filing of the petition, less than twelve creditors who can be counted, and that this petition is properly brought under Bankruptcy Act, section 59 (d) and (e), 11 USCA § 95(d) and (e)," and recommended "that an adjudication in bankruptcy be made." The District Court, after a hearing, approved the recommendation of the master and ordered adjudication; and the Navison Shoe Company, Inc., appealed.

There are many assignments of error, but we do not find it necessary to state them.

■ It is settled for this circuit that the number of creditors outstanding at the time of the filing of the petition is the number to be

counted in determining whether a single creditor can maintain a petition, based on the allegation that the number of creditors is less than twelve; and that that allegation is jurisdictional. Moulton v. Coburn (C. C. A.) 131 F. 201, 202.

It is also clear from the findings of the master that, at the time of the filing of the petition, four creditors had assented to the assignment, and that their claims cannot be counted in determining the number of outstanding creditors (Moulton v. Coburn [C. C. A.] 131 F. 201; Stroheim v. Lewis F. Perry & Whitney Co. [C. C. A.] 175 F. 52); that the two claims assigned to Joseph Navison, aggregating $107.25, can be counted, if at all, only as a single claim (Emerine v. Tarault [C. C. A.] 219 F. 68); and that the number of creditors, outstanding at the date of the filing of the petition, were at least twenty-eight, not including the claim of $107.25. In other words, that there were more than twelve creditors; and that the order of adjudication was improper, unless some valid reason, disclosed by the facts found by the master, requires a different conclusion.

As above pointed out, the master found that Joseph Navison purchased, or caused to be purchased and assigned to him or his nominees, after the petition was filed, seventeen of the small claims outstanding at the time the petition was filed, and for this reason ruled that the Navison Shoe Company, Inc., was estopped to have the claims counted as outstanding at the time the petition was filed; and applied the same reasoning to the two claims aggregating $107.25 purchased by Joseph Navison, prior to the filing of the petition. It is evident that the reason assigned by the master for eliminating the seventeen claims from the count was erroneous, even though it could be said that Joseph Navison, in purchasing or causing the claims to be purchased, was the agent of the Navison Shoe Company, Inc. It might be estopped from having the two claims, aggregating $107.25, counted as the claims of two distinct creditors, for that would be to change the status existing at the time of filing the petition, upon which the petitioner then had a right to rely, and to his detriment. At that time the two claims had become one in the hands of Joseph Navison, and would be extinguished had they been purchased with funds furnished by the Navison Shoe Company, Inc., but they were not. They should have been counted as one claim. The seventeen small claims, which he purchased or caused to be purchased, did not change the status existing

at the time the petition was filed, for they were not purchased until after that time; and, if the petition was filed in the belief that their status was that of outstanding claims, there was no misapprehension or misleading, for they were then outstanding claims. Estoppel, therefore, was not a valid ground for excluding these seventeen claims. The District Court evidently was not satisfied with the reason assigned by the master for the rejection of the seventeen claims, for in its opinion it said: "As has been said there were more than 12 creditors when the petition was filed; Joseph Navison's action in buying up the small claims [the seventeen] did not alter that fact. There is no certainty that any of these small creditors would have joined the petitioner; the effect of what Navison did was to deprive it of any chance to persuade them to do so." The position taken by the District Court evidently was this: It having been found that Joseph Navison owned the beneficial interest in all the stock of the Navison Shoe Company, Inc., and had paid or caused to be "paid face value for these claims against an insolvent debtor," it assumed that there could be "no legitimate reason for his doing so," unless he bought them on behalf of his company to protect it against bankruptcy proceedings; and that his relationship to the Navison Shoe Company, Inc., was such "as to make his action attributable to it."

It did not hold that these seventeen claims had ceased to exist, which they plainly had not, for the Navison Shoe Company, Inc., had not paid for them, but that in some way it was responsible for their purchase, although it did not furnish the money for their purchase, or agree to, and although Joseph Navison was not a director, officer, or agent of the Navison Shoe Company, Inc., in this or in any other matter. Having taken the position that Joseph Navison, in purchasing or causing to be purchased these seventeen claims, was the Navison Shoe Company, Inc., it considered the question for decision to be the same as though the Navison Shoe Company, Inc., itself had purchased these claims, not to prevent the petitioner from maintaining his petition as a single creditor (which of course his action had no tendency to prevent), but to preclude the possibility of any two of those creditors joining in the petition and making it a three creditors' petition, and for this reason was a fraud on the act—citing Leighton v. Kennedy (C. C. A.) 129 F. 737, 741.

Leighton v. Kennedy did not involve a situation like the one here presented. In that case Martin, the assignee under a general as-

signment, prior to the filing of a petition in bankruptcy against Leighton by a single creditor, bought with the funds of the trust estate, and had assigned to him, twelve accounts outstanding against Leighton, and then, four days before the petition was filed, assigned the twelve accounts to twelve different persons; and the question was whether, after these accounts had merged in Martin, so that, under Massachusetts law, he became both at law and in equity a single creditor, he could, by assigning the accounts to twelve different persons, thus change the status with reference to the number of creditors outstanding at the time the petition was filed. It was held that he could not, first, for the reason that they were extinguished, as their purchase had been made "from his (Leighton's) assets, or on his account," which conduct he had not repudiated but acquiesced in; and, second, assuming that they had not been extinguished, but had merged in Martin as a single creditor, Martin's attempt, before the petition was filed, to create twelve creditors, where only one existed, assented to by Leighton and the others concerned, could not be done. As to this the court in that case said: "The subsequent assignments by him [Martin] constituted an attempt to create artificially a new condition for the specific purpose, *assented to by all involved,* of defeating the carefully prepared scheme of the bankruptcy statutes with reference to the subject-matter which this proceeding concerns. An attempt to create such a condition, and thus by indirect methods to defeat the scheme of the statute, is unlawful and void"; that the situation presented was to be distinguished from one presenting an honest purpose to adjust the affairs of a debtor by a voluntary agreement among creditors, though the effort was ineffectual, for in the case before the court it was expressly found that the purpose of Martin and his assignees in subsequently splitting up the claims and assigning them to twelve different persons was "to keep claims enough alive to prevent a single creditor from maintaining a creditor's petition in bankruptcy against said Albert Leighton"; that is, for the sole purpose "of defeating the scheme of the statute." It further said that the purpose of the assignee (Martin), acquiesced in by Leighton, the bankrupt, was reprehensible, for it "looked to forcing the petitioner out of the bankruptcy courts, and to depriving him *of the right* which the statute carefully sought *to secure* him [the right as a single creditor to maintain a petition where there are less than twelve creditors]; and that it should be understood that we do not

intend to cover by this decision anything except in regard to the precise facts before us."

The master, in the instant case, did not find that the seventeen claims were purchased by Joseph Navison for the purpose of preventing the petitioning creditor from showing that there were less than twelve creditors when the petition was filed, and he plainly could not have so found; nor did he find that his only purpose in purchasing or causing to be purchased these seventeen claims was to prevent other creditors from joining with the petitioning creditor. The District Court Judge, however, seemed to think that no legitimate reason could be suggested for Navison's action "than that he bought them (the claims) on behalf of his company to protect it against bankruptcy proceedings."

Navison did not buy the claims for his company, but for himself. They were bought with his own money, or that of his daughter, not with money of the company. He was a creditor of the company, not an officer or agent of it. He was a creditor for $107.25, and he had indorsed its note to the Beacon Trust Company for $2,500, which creditor had assented to the assignment; and, as a creditor, and an indorser of the note, he had an interest to protect in seeing that the assignment was carried into effect, so that it cannot be said that his sole purpose in purchasing the seventeen claims was that these creditors should be prevented from joining in the petition. Furthermore, if such was his purpose, he did not violate any *right* conferred upon the petitioner by section 59(d); that section does not give a single petitioning creditor the right to have other creditors join in the petition; his right to maintain such a petition is where the number of creditors is less than twelve. It does, however, confer upon the other creditors the *privilege* of joining in such a petition, when there are more creditors then twelve. It is optional with them to exercise this privilege or not. None of the creditors in this case joined, though some were solicited, and all knew of the assignment and the petition.

As we understand it, the question here involved was specifically passed upon in In re Coburn et al. (D. C.) 126 F. 218, 219; on appeal Moulton v. Coburn (C. C. A.) 131 F. 201, 204, 205, which case was decided by this court subsequent to its decision in Leighton v. Kennedy. In the Coburn Case, the petition was brought by a single creditor. After the filing of the petition, and before and after the answer was filed, some thirteen creditors assigned their claims to nominees of Bartlett, the common-law assignee. These

nominees of Bartlett to whom the claims were assigned paid for them under the expectation, if not under the agreement, that Bartlett would reimburse them. In that case Judge Francis Lowell, in passing upon the question in the District Court (126 F. 219), said: "If the number of creditors be reckoned as of the date of the petition, the subsequent acts of the creditors and of the voluntary assignee need not be considered. Even where creditors were led not to join in the petition by the inducement of the respondent himself, it has been held that they should be reckoned for the purpose of section 59d [11 USCA § 95(d)]. In re Brown (C. C.) 111 F. 979. In the case at bar the solicitation was that of the voluntary assignee, and, though he was for some purposes the agent of the respondent, it is not shown that he acted as agent in the solicitation, and I rather infer that he acted as a creditor or in behalf of creditors. Had the creditors been induced by Bartlett, through payment of money or otherwise, not to join in the petition, they would still be reckoned among the number of creditors. That in addition they have transferred their claims to Bartlett's assignee does not help the petitioner."

The Circuit Court of Appeals affirmed the decision of the District Court, and in discussing this proposition (131 F. 205), said: "The date at which a creditor's rights accrue under the bankruptcy act is a matter of material consequence. While the statute gives to creditors who intervene in a sole petition the right to proceed as parties to that petition, we find in the statute no evidence of an intention that *rights not existing at the date of the petition* can be made effective thereunder, or that a sole petition alleging what is not true—that there are but twelve creditors—can be validated at some indefinite subsequent time by a reduction of the number of creditors." The court had previously pointed out in its opinion that section 59(d) of the statute (11 USCA § 95(d) gave "a *privilege* to creditors to join in a petition," not a right, and that "the District Court was right in holding that, upon a petition by less than three creditors, it must appear that there were less than twelve creditors at the date of filing the petition, and therefore that the subsequent acts of the creditors and of the voluntary assignee need not be considered."

There is, however, a further ground upon which we think the creditor's petition should be dismissed, and that is, that the conclusion to be drawn from the primary facts found by the master is clear—that the Lane Shoe Company, on November 10, 1928, when it filed the petition, in which it alleged that the creditors of the Navison Shoe Company, Inc., were less than twelve, did so knowing that the allegation was false; or did so recklessly not caring whether the allegation, which it affirmed as of its own knowledge to be true, was true or false, and, being false, its conduct was a fraudulent attempt to confer jurisdiction upon the court, where none existed.

The primary facts, as above stated, show that the day following the general assignment the assignee, as was his duty in the administration of the trust, caused a letter to be sent to each of the creditors of the Navison Shoe Company, Inc., including the Lane Shoe Company, informing them that there were about thirty creditors; that in preliminary hearings in the equity suit in the state court the Lane Shoe Company was informed that only four creditors had assented to the assignment; and that on November 6, 1928, just four days prior to filing the petition, it was again informed, in the sworn answer filed in the equity suit, that there were in all, on July 13, 1928, about thirty creditors. To say that the Lane Shoe Company did not know, and had no reason to believe, at the time it filed the petition, that there were more than twelve creditors, it is necessary to find that it believed that the assignee, whose duty it was to give correct information as to the state of his trust, not only to the Lane Shoe Company, but to all other creditors as well, was willfully and falsely stating what was not true; that reputable attorneys in court were falsely stating what was not true; and that one of the parties in the equity suit in the state court committed perjury when, in answer to the interrogatory, he stated under oath that there were about thirty creditors. It is incredible that the petitioner did not believe the information that had been given it, or, having such information, did not suspect what it affirmed in its petition to be true was false, in which event its conduct would be fraudulent, for one cannot affirm as of his own knowledge a thing to be true, intending it to be relied upon, if he suspects it to be false, without being guilty of fraud. Shackett v. Bickford, 74 N. H. 57, 65 A. 252, 7 L. R. A. (N. S.) 646, 124 Am. St. Rep. 933. A person who suspects his statement is false does not entertain an honest belief it is true, or is consciously and wickedly indifferent to its truth or falsity.

The order of the District Court is reversed, and it is ordered that the petition be dismissed, with costs to the appellant in both courts.