**In re SECURITY MOTOR CO.**
No. 17549.

District Court, W. D. Missouri, W. D.
Sept. 16, 1943.

A. J. Granoff, of Kansas City, Mo., for Security Motor Co.

Warren S. Earhart and Harry B. Jenkins, both of Kansas City, Mo., for petitioning creditors.

REEVES, District Judge.

In this case a sole qualified creditor filed an involuntary petition in bankruptcy against the alleged bankrupt. It did this perforce the provisions of paragraph b, Section 95, 11 U.S.C.A. Such provision is as follows: "* * * if all of the creditors of such person are less than twelve in number, then one of such creditors whose claim equals such amount may file a petition to have him adjudged a bankrupt."

No issue was made as to the qualification of the petitioning creditor. It is contended, however, that the number of creditors was far in excess of twelve and that the petitioning creditor knew this when it filed its petition and that, therefore, the petition was filed in bad faith.

Under such circumstances as held in Myron M. Navison Shoe Co., Inc., v. Lane Shoe Co., 1 Cir., 36 F.2d 454, it is contended that such petition was not eligible for the intervention or joining of other qualified creditors. The reason is that if the averment that there were less than twelve creditors was knowingly falsely made or recklessly made, it would constitute such bad faith and fraud as to destroy the legal efficacy of the petition.

The special master found upon an extensive hearing that the petitioning creditor neither fraudulently nor recklessly made the averment, and that even though there were far more creditors than the minimum alleged by the petitioning creditor, yet others had joined, and that the bankruptcy petition was invulnerable to attack.

Upon such findings the alleged bankrupt in due time filed exceptions to the special master's report. Counsel on both sides have been heard in arguments upon the

contention that the master's findings were not supported by the evidence.

The briefs of the parties have been studied and the transcript of the evidence before the special master has been carefully read. It seems appropriate, in view of the earnest contention of counsel, to make a full statement of the facts:

The alleged bankrupt was engaged in buying and selling second hand or used automobiles. It was so engaged in August, 1942. The petitioning creditor was a finance company and did an extensive business with the alleged bankrupt in financing its operations. It not only bought paper taken by the alleged bankrupt, but at different times made loans upon automobiles carried in stock. Such transactions were so extensive that representatives of the petitioning creditor, the Interstate Securities Company, maintained close contact and a limited observation over the operations of the alleged bankrupt. Such observations were in the nature of inspections to verify the presence and existence of automobiles carried in stock and covered by mortgages held by petitioning creditor. In August of 1942 it was discovered that the alleged bankrupt had negotiated loans upon the identical property mortgaged to the petitioning creditor. These were designated as duplicate loans. In an effort to protect the petitioning creditor against loss these facts were called to the attention of the proper officer of the alleged bankrupt and checks in satisfaction of the loans carried by the petitioning creditor were given, but they proved worthless. Thereupon the parent corporation of the alleged bankrupt procured an assignment for the benefit of creditors through a state court proceeding. It was then discovered that the books of the alleged bankrupt did not reflect its true condition, and, on December 9, 1942, the petitioning creditor filed its involuntary petition in bankruptcy with the averment hereinbefore mentioned. In due course the alleged bankrupt filed its answer, as provided by paragraph d of said Section 95. With such answer a list of creditors, properly verified, was filed. In conformity with the act, notice was given to the creditors and in due course qualified creditors joined in the petition. There were some irregularities in the verification of the claims, and, concerning these, the master made appropriate criticism. However, such irregularities were corrected and as the record now stands the sole petitioning creditor has been joined by a sufficient number of qualified creditors to make the petition a valid one, if otherwise the original petition was filed in good faith and upon an honest belief that the number of creditors was less than twelve.

The evidence was voluminous. There was evidence on the part of the alleged bankrupt that representatives of the petitioning creditor had access to the books, were present at numerous conferences and discussions, and that all of these were sufficient to inform the petitioning creditor fully that there were in fact more than twelve creditors. Such representatives by their testimony stoutly and rather vehemently disputed that such information was conveyed to them and that they had knowledge of the facts claimed by the alleged bankrupt.

In examining the testimony of witnesses for the alleged bankrupt it was disclosed that there "were a lot of things in the books that weren't true," and that, "there have been false entries and coverups reflected by the books * * *." Such witnesses testified that when the bad checks heretofore mentioned were issued the books showed the ownership of ample funds by the alleged bankrupt to pay such checks. In fact, according to a witness for the bankrupt, the books reflected solvency and not insolvency just prior to the act of bankruptcy heretofore mentioned. In answer to the statements that agents or representatives of the petitioning creditor were advised of a large number of creditors before filing the involuntary petition in bankruptcy, such representatives made clear statements which would indicate that they did not possess such knowledge or were not informed as contended by counsel for the alleged bankrupt. The record does not yield the inference that such witnesses were evasive or in anywise contradictory in the evidence given by them.

■ 1. A careful reading of all of Section 95 shows that it was contemplated by the Congress that a single qualified petitioning creditor might reasonably be mistaken in an averment that there were less than twelve creditors in order to qualify such petitioner for instituting a bankruptcy proceeding. By paragraph d the answer of the alleged bankrupt might disclose a large number of creditors. In such event it was not contemplated that the petition should be dismissed but that the sole

creditor might be joined by a sufficient number of other qualified creditors so as to warrant the further proceeding in bankruptcy.

By paragraph e of said Section 95 a large number of persons as creditors may not be counted against the sole petitioning creditor's contention. These were enumerated as employees, relatives, or (in the case of a corporation) stockholders, officers, or members of the board of directors, creditors who have participated in the act of bankruptcy, fully secured creditors, and those who have received preferences. It will be noticed from these exceptions that a large concourse of creditors would be disqualified so that it is questionable in any case but that a sole petitioning creditor would find justification in an averment that the number of creditors lawfully considered were less than twelve.

█ 2. This is not the usual case of fraud and deceit. No one was deceived by the averment to his disadvantage. The law contemplated that it might not be true and still not justify adverse action against the petitioner. According to the admitted facts the alleged bankrupt is insolvent, and, moreover, while insolvent it committed an act of bankruptcy. It would follow that the creditors had a legal right to compel bankruptcy.

The question now is whether the sole petitioning creditor should be convicted of such fraud or reckless action as would warrant the dismissal of the petition. It is the Missouri rule, supported by a wealth of authority, that in cases of alleged fraud the burden of proof is upon the person asserting the fraud "to make out his case by clear and convincing evidence." Jones v. Nichols et al., 280 Mo. 653, 216 S.W. 962, 964; Walsh et al. v. Walsh et al., 285 Mo. 181, 226 S.W. 236. It would be reasonable to say in a case of this kind that the proof must not only be clear and convincing, but must show fraud beyond all peradventure. Proceedings thus begun should not be interrupted or terminated except upon evidence which shows beyond dispute that the court's jurisdiction was willfully imposed upon.

█ The evidence in this case does not go that far, but on the contrary, a preponderance of the testimony as weighed by the master shows that the sole petitioning creditor acted in the utmost good faith.

In the case of Myron M. Navison Shoe Co., Inc., v. Lane Shoe Co., supra [36 F.2d 456], relied upon by counsel for the alleged bankrupt, it not only appeared that the company showed valid claims in excess of twelve in number, but "that on November 6, 1928, just four days prior to the filing of the petition, in answer to interrogatory 49 filed in the equity suit, there was furnished to counsel of the Lane Shoe Company an answer under oath made by one of the defendants, in which, among other things, the affiant stated, 'As to the list of creditors (of the Navision Shoe Company, Inc.) there were in all on July 13, 1928, about thirty creditors.'" This was in addition to the fact that immediately after the assignment for the benefit of creditors the assignee "caused a letter to be sent to the creditors of the Navison Shoe Company, Inc., including the Lane Shoe Company," informing them that there were "about thirty creditors."

Under such circumstances the court properly held, that, when the sole petitioning creditor incorporated in its petition an averment that there were less than twelve creditors, he knew better. In the light of these facts the court said that the petition was a fraud in law and had improperly invoked the jurisdiction of the federal court in bankruptcy. No such situation is presented in this case. On the contrary, the affairs of the alleged bankrupt in the case at bar reeked with fraud.

█ 3. Rule 52 of the New Rules of Civil Procedure, 28 U.S.C.A. following section 723c, specifically provides, among other things: " * * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court."

In the very recent opinion of Dunsdon v. Federal Land Bank of Saint Paul, 137 F.2d 84, 86, decided by the Circuit Court of Appeals, 8th Circuit, on June 29, 1943, the court interpreted and applied this rule in considering the findings of fact made by a conciliation commissioner. Such commissioner, was analogous, of course, to a special master. The court said: "The district judge, where he chooses simply to review the record made before the conciliation commissioner, without himself receiving further evidence, must give due regard to the greater opportunity which the conciliation commissioner has had to judge of

562

the credibility of the witnesses. Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A. following section 723c; General Orders in Bankruptcy, Order 47, 11 U.S. C.A. following section 53. He should not attempt, where he does not receive further evidence, to set aside a finding of the conciliation commissioner, unless it is based upon a material error in the proceedings or a mistaken view of the controlling law, or is unsupported by any substantial evidence, or is contrary to the clear weight of all the evidence. Cf. Ætna Life Ins. Co. v. Kepler, 8 Cir., 116 F.2d 1, 5."

4. In the argument it was suggested that in a proceeding in a state court greater power or jurisdiction existed to secure relief in a number of complex situations requiring adjudication in the interest of justice. Proceedings in bankruptcy invoke equitable principles. Every question arising or existing, whether for or against the bankrupt, can be adjudicated in the proceeding. As full and complete relief can be had in bankruptcy as in a strictly equitable proceeding. However, in this case, the right to proceed here supersedes all other proceedings.

In view of the foregoing, the special master having been amply supported by the evidence, his findings should be accepted and approved as correct, and the report of the special master should be in all things confirmed. It will be so ordered.