PHILLIPS, Senior Circuit Judge.
This case involves the filing requirements for involuntary petitions in bankruptcy. Appellant Basin Electric Power Cooperative filed an involuntary petition for reorganization under Chapter 11 of the Bankruptcy Code against appellee Midwest Processing Company. Although Midwest Processing had twelve or more creditors, no other creditors joined in the petition as required by 11 U.S.C. § 303(b)(1).[1] Mid *484 west Processing moved to dismiss the petition for lack of the requisite number of petitioning creditors, supporting the motion with a list of over 100 of its creditors. The bankruptcy court denied the motion without prejudice and authorized Basin Electric to notify other creditors of the petition. On April 30, 1984, Dakota Fire and Safety Equipment Company, Inc. moved to join the petition. On May 4, 1984, Pump Systems, Inc. also moved to join the petition. At a hearing before the bankruptcy court on May 4 and 5, 1984, Midwest Processing Company reasserted its motion to dismiss, contending that the petition and motions to intervene were filed in bad faith. The bankruptcy court denied the motion and ordered relief on May 24, 1984.
On appeal to the district court, the district court reversed the bankruptcy court order in a memorandum opinion entered December 17, 1984, 47 B.R. 903. The court relied on the finding of the bankruptcy judge that Basin Electric knew Midwest Processing had twelve or more creditors when it filed the involuntary petition in bankruptcy. The district court held that the petition was filed in bad faith. It held that where “a single creditor commences an involuntary case despite knowledge that the debtor has twelve or more creditors, the petition is deficient and should be dismissed absent special circumstances.” The court also held that Basin Electric filed the petition in bad faith to collect on a letter of credit from the Continental Illinois Bank and “attempted to invoke the jurisdiction of the Bankruptcy Court to affect a contract dispute.” For the reasons that follow, we affirm the dismissal of the petition.
I
Midwest Processing Company has operated a sunflower seed processing plant near Velva, North Dakota since June 1982. It executed agreements with Basin Electric, a power supplier, whereby Basin Electric would supply water and steam for the processing plant and Midwest Processing would supply seed hulls for energy production. Basin Electric needed to make modifications to its coal fired generating plant, the William J. Neal Station, in order to perform under the agreements. It invested approximately $5.8 million in the construction project. The project was completed by June 1, 1982. Midwest Processing was required to make periodic payments to Basin Electric to reimburse it for the costs of the improvements.
The bankruptcy court found that Midwest Processing has operated at a substantial loss since 1982. In 1983 and the first half of 1984, it suffered net losses totalling $14 million. From the spring of 1983 until October 1983 it had to cease de-hulling operations because its process was defective and major modifications were necessary. On February 16, 1984, Midwest Processing ceased its crushing operations and laid off large numbers of employees. Midwest Processing has a $45 million long-term debt, 90 percent of which is guaranteed by the Farmers Home Administration. The remaining $4.5 million arose out of an unguaranteed loan by several financial institutions. On February 28, 1984, Midwest Processing did not make a semi-annual interest payment of $2.8 million due to the Farmers Home Administration. It also defaulted on another $2.8 million interest payment due August 31, 1984.
From June through August of 1982, Midwest Processing maintained a $4 million deposit as security for its debt to Basin Electric. In August of 1982, it maintained as security a $5 million letter of credit in favor of Basin Electric at the Continental Illinois Bank. It was renewed in April of 1983 and was due to expire on March 31, 1984. The letter of credit contained an escrow agreement providing Basin Electric with authority to draw on the note in the event that Midwest Processing filed for voluntary bankruptcy or had filed against it an involuntary petition that remained *485 undissolved after 60 days. There was no other security for Basin Electric’s investment.
Prior to the expiration date of the letter of credit, the parties had a dispute concerning the obligation of Midwest Processing to renew the letter. Midwest Processing, believing that it had no obligation under its agreements with Basin Electric to do so, did not assure that the letter of credit would be maintained as security. On February 28, 1984, Basin Electric’s accounting manager gave notice that it considered Midwest Processing in default of the agreements. The parties met to discuss the issue, but were unable to resolve their differences. Litigation is proceeding in other courts to determine the contractual obligation of Midwest Processing to provide security. Both the' district court and the bankruptcy court found that there is a legitimate contractual dispute on this issue.
On March 29, 1984, Basin Electric terminated the agreements and accelerated the outstanding $5.3 million debt for improvements. The same day, it filed the involuntary petition under Chapter 11. It invoked the escrow agreement providing for drawing on the letter of credit. Indeed, there was testimony by Basin Electric, and the district court so found, that the sole purpose of the petition was to draw on the letter of credit. Basin Electric was aware that Midwest Processing had twelve or more creditors and that involuntary petitions therefore required three or more petitioning creditors. Nevertheless, appellant filed the petition on its own and intentionally omitted reference to the number of creditors in its petition.
At the time of the petition, Basin Electric had paid its past debts except the large interest payment to the Farmers Home Administration. It owed intervenor Pump Systems $90.20 at the time of the petition and paid that amount shortly after Pump Systems intervened. It owed Dakota Fire and Safety Equipment Company, Inc. $206.69 on the date of the petition and paid that amount shortly afterward and before intervention. Both of these intervenors had advantageous business relationships with Basin Electric that they wished to protect. Both received broad indemnity agreements from Basin Electric holding them harmless from any losses or costs associated with the case. The Farmers Home Administration submitted an affidavit urging a resolution outside of bankruptcy-
II
Appellant Basin Electric argues the district court erred by dismissing the petition for filing in bad faith. Although it filed the petition with knowledge that was insufficient, it argues that it was appropriate to add other creditors after the petition was filed. Appellant relies on 11 U.S.C. § 303(c), which provides:
After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.
Appellant also relies on Rule 1003 of the Bankruptcy Rules of Procedure. Rule 1003(d) provides:
If the answer to an involuntary petition filed by fewer than three creditors avers the existence of twelve or more creditors, the debtor shall file with the answer a list of all creditors with their addresses ... If it appears that there are twelve or more creditors ... the Court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon.
Appellant argues that because the three creditor requirement is not jurisdictional and may be waived, see In re Earl’s Tire Service, Inc., 6 B.R. 1019, 1022 (D.Del. 1980); Collier on Bankruptcy UU 303.23(4), 303.15[6], it did not act in bad faith by knowingly filing a deficient petition that omitted reference to the number of creditors of Midwest Processing.
*486 Accepting appellant’s argument would circumvent unduly the three creditor requirement of section 303(b). The three creditor requirement is not a meaningless formality that a creditor may ignore until after filing the involuntary petition. While an involuntary petition may be cured after filing when a single creditor files in good faith believing the debtor has fewer than twelve creditors, a single creditor may not file an involuntary petition knowing the debtor has twelve or more creditors.
In Myron M. Navison Shoe Co., Inc. v. Lane Shoe Co., 36 F.2d 454 (1st Cir.1929), a single creditor filed an involuntary petition alleging the creditors “are less than twelve in number.” Id. at 455. The debtor denied the allegation and submitted a list of other creditors. The court discussed the relevant number of creditors in the circumstances of the case and found that there were twelve or more. The court ordered the petition dismissed, holding it was clear from the findings that the creditor’s allegation of fewer than twelve creditors was false, recklessly made, and was a fraudulent attempt to confer jurisdiction on the court. Id. at 459.
Other courts have adopted the good faith requirement announced in Navison. The court in In re Crofoot, Nielson & Co., 313 F.2d 170 (7th Cir.1963), although remanding the district court’s dismissal of an involuntary petition for further findings on the issue of fraud, id. at 172, held: “But if a single creditor files a petition with knowledge that the allegation (less than twelve creditors) is false, the petition will be dismissed as a fraudulent' attempt to confer jurisdiction upon the court where none exists and intervention ‘presumably’ will be denied.” Id. at 171 (citing, e.g. Navison; 3 Collier on Bankruptcy 601-02 (14th ed. 1961)). Similarly, in In re Crown Sportswear, Inc., 575 F.2d 991 (1st Cir.1978), the court found there was no evidence of bad faith on the part of the creditor justifying dismissal of the involuntary petition, but emphasized the good faith requirement. The court stated that Rule 104(e) anticipates “that one-person petitions might be mistaken as to the number of creditors” and allows joinder of other petitioning creditors to cure the defect in such instances. Id. at 993 (emphasis added). While noting that the bankruptcy laws adopt a “charitable attitude toward petitions mistakenly asserting that there are less than twelve creditors,” the court stressed that intervention as a matter of right is not allowed where the petition was “made in bad faith to invoke jurisdiction.” Id. at 993. The court held that the petitioning creditor, although it made only a cursory investigation of the number of creditors, had not engaged in bad faith in alleging fewer than twelve creditors. The court noted, “There simply was no evidence that appellee knew or should have known that there were twelve or more creditors.” Id. at 994. It stressed that the burden is on the party opposing the petition to show bad faith. Id. at 993.
Midwest Processing in its answer made a timely challenge to the petition as did the alleged debtors in the above cases. Those cases recognized that a timely challenge to an involuntary petition alleging fewer than twelve creditors will preserve a challenge to the good faith of the petitioning creditor. This is not a case such as In re Earl’s Tire Service, Inc., 6 B.R. 1019 (D.Del.1980), where the district court dismissed a challenge to a single-creditor involuntary petition because the debtor had not raised the defense in its answer. The court held the debtor had waived objection to defects in the petition.
The district court concluded correctly that it is not the making of a false statement alone that constitutes bad faith, but the wrongful attempt to commence a bankruptcy proceeding. As the bankruptcy court noted in In re Rite-Cap, Inc., 1 B.R. 740, 741 (Bankr.D.R.1.1979), “An essential prerequisite for allowing joinder of additional creditors to cure a defective petition is that the petition was filed in good faith. If the original petition was a sham, prepared with a view of being later supported by intervention of other creditors, joinder should be denied.” (citations omitted). Basin Electric knew that Midwest Processing *487 had twelve or more creditors and intentionally filed a deficient petition. Merely because the defects were subject to waiver does not excuse the intentional filing of a defective petition.
The three creditor requirement is designed to prevent use of involuntary bankruptcy proceedings by creditors as a means of harassing an honest debtor. In re Skye Marketing Cory., 11 B.R. 891, 897 (Bankr.E.D.N.Y.1981). If the three creditor requirement is to have any legal significance, it may not be knowingly circumvented with an eye to adding other creditors later on. The sole purpose of Basin Electric was to file a petition quickly before the letter of credit expired. The parties had a contract dispute regarding the letter of credit. Basin Electric was motivated by the desire to attain an advantageous position with regard to the letter of credit. The use of the petition by Basin Electric to affect a non-bankruptcy purpose is further evidence of bad faith.
Accordingly, the decision of the district court reversing the bankruptcy court is affirmed.

. Section 303(b)(1) of the Bankruptcy Code provides: (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the *484 subject on a bona fide dispute, or an indenture trustee representing such holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.