**In re Richard J. JAUREGUI, Alleged Debtor.**

**Richard J. JAUREGUI, Plaintiff,**

**v.**

**SAN ANTONIO FEDERAL CREDIT UNION and Texas Bank, N.A., Defendants.**

**Bankruptcy No. 95–51528–C.**
**Adv. No. 95–5096–C.**

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

July 17, 1995.

---

Phillip A. Yochem, Jr., San Antonio, TX, for Richard J. Jauregui.

Deborah D. Williamson, San Antonio, TX, for San Antonio Federal Credit Union.

Michael Flume, San Antonio, TX, for Texas Bank, N.A.

## AMENDED[1] DECISION AND ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing plaintiff's application for temporary restraining order. Plaintiff sought to enjoin the joinder, amendment, intervention or other form of pleading by any additional creditor to join in the involuntary petition, due to the alleged bad faith of the petitioning creditors, and further asking to enjoin them from contacting any additional creditors with a view towards soliciting their participation. The application also sought to enjoin other creditors from joining or intervening without further order of the court. The application was accompanied by an affidavit which incorporated the allegations in the complaint, and further listed the names (but not the addresses) of what the debtor

1. Amended to correct minor typographical errors.

maintained were the debtor's creditors, exceeding twelve.

The court set the matter for hearing, and evidence was put on by both parties. In addition, legal argument and authorities were presented. The plaintiff applicant completed its presentation of evidence, though he further sought to call as a witness counsel for SACU and counsel for Texas Bank, N.A. The court declined to permit this examination, and ruled on the evidence presented, on grounds that a hearing on temporary restraining order could not be converted into a fishing expedition. Instead, the plaintiff could pursue discovery of counsel, in furtherance of its application for preliminary injunction. Nothing in the record indicated that the plaintiff relied on the efforts of SACU's lawyers or Texas Bank's lawyers, or even had knowledge of those efforts, as a preliminary to filing the application for temporary restraining order. There was of course the argument that "reasonable counsel *would have made* additional inquiries," but that contention did not need evidentiary support at the hearing on temporary restraining order.

■ The application for temporary restraining order fails at a number of different levels. First, and most critically, the application is facially defective because it fails to establish that the plaintiff is bereft of an adequate remedy at law. Section 303(i) gives to the debtor the ability to recover costs and attorneys' fees if the petition is dismissed, and damages (including punitive damages) if the petition was filed in bad faith, as is alleged here. Nothing in the application itself suggests in what special way the applicant is harmed by any effort by the petitioning creditors to solicit others to join the petition. Indeed, all that the application says is that, because the petition is filed in bad faith, the petitioning creditors should not be permitted to get others to join the petition. In fact, if the petition is indeed filed in bad faith, as applicant contends, obtaining the joinder of additional creditors will not cure the problem and the petitioning creditors will still face damages. *Basin Electric Power Cooperative v. Midwest Processing Co.,* 769 F.2d 483, 486 (8th Cir.1985).

■ The court permitted the hearing to proceed, notwithstanding this defect, on the belief that the applicant might suffer some non-quantifiable and irreparable damage from the petitioning creditors' merely contacting other creditors about the possibility of joinder. No mention of such damage is alleged in the application, it should be emphasized, but even if it were, the applicant adduced no evidence whatsoever that the debtor would in fact suffer any such non-quantifiable damage as a result of such contacts. If anything, most of the additional "debts" which the debtor here alleges bring the total of creditors above 12 are held by creditors who are asserting deficiency judgments after foreclosing on property, or are asserting judgments arising from litigation. The debtor's credit reputation with these creditors can fairly be presumed to be virtually nonexistent already. The court has no reason to presume any special damage that might come from contact by these petitioning creditors, and the debtor offered no affirmative evidence to support such a contention.

■ For these reasons, the debtor has failed to establish by even a *prima facie* showing an essential element of his request for injunctive relief. But the application also fails because the applicant has not demonstrated a likelihood of succeeding on the merits. To succeed, the debtor would have to show at the least a prima facie demonstration that the petitioning creditors had acted in bad faith in filing the involuntary petition with less than 12 creditors. The debtor fails to do so.

First of all, the debtor contended that he had personally delivered to an officer of SACU, one Edward Speed, a copy of his September 1994 Financial Statement, as Restated November 30, 1994. This Financial Statement reflected liabilities in the range of $1.7 million. The debtor said that his business manager, one Leonard Morris, was present at this meeting, and saw the delivery of the Financial Statement. Mr. Speed, however, retorted that he had indeed received a financial statement that day from the debtor, and that Mr. Morris was indeed present, but asserted with absolutely no doubt that he

was given the *June 1993* Financial Statement, as Restated November 30, 1994. This Financial Statement reflected liabilities of only $1300, and assets of less than $3,000. Mr. Speed's testimony was most emphatic and certain, with him recalling what the statement contained, and his calling his lawyer shortly after the debtor left his office to forward a copy of the statement to his lawyer. He stated under oath that he had never seen the September 1994 Financial Statement until the day of the hearing.

The debtor's testimony and that of Mr. Speed cannot coexist. Only one is telling the truth, negating completely the truth of the other's statement. The court, upon evaluating the tenor of the testimony of both witnesses, including the surrounding context of the parties' behavior, and the fact that the debtor did not call as a corroborating witness Mr. Morris, concludes that Mr. Speed was telling the truth—meaning that the debtor was not. The court need give no weight whatsoever to testimony that the court has found not to be true, meaning that the debtor has not made out even a *prima facie* showing on this count.

But the debtor adds that, in any event, the petitioning creditors knew or should have known that the debtor had more than twelve creditors. The debtor cobbles this conclusion from a variety of pieces, consisting first of the two credit reports that SACU arranged to obtain, then from the information that SACU already had about one or two additional debts, the fact that SACU had in hand the 1991 Financial Statement of the debtor, and the line in the marital agreement to the effect that debts would still be kept by the debtor notwithstanding transfers of property into the self-settling trust he created in mid-June 1991. The resolution of this contention is a two-step process. We first ask about what the petitioning creditor knew. Then we ask about what the petitioning creditor should have known.

First of all, the evidence does not make out a prima facie case that SACU knew whether the debtor had more than 12 creditors, at least not under the applicable case law. The credit reports showed, by the conclusion of the evidence, not more than eight creditors,

and two of them are not the sort that this court thinks ought to count. The American Express bill, for example, is actually a recurring, revolving, current sort of bill, not the sort of debt that a creditor need count when determining whether the debtor has more than 12 creditors. The bill has more the quality of monthly utility bills and the like. In addition, SACU would have known of no more than two additional creditors, one a law firm and the other a deficiency creditor. For the remaining creditors, SACU would have had to have done some digging.

■ Which brings us to the second issue—what SACU should have known. Here, the debtor would erect a fairly high standard of care, accompanied by a fairly high penalty for breach of that duty of care. If accepted, such a test would almost certainly discourage any creditor from ever daring to commence a case with any less than three creditors, effectively eviscerating the provisions for needing but one creditor in cases in which the debtor has (or more importantly, the creditor justifiably believes the debtor has) less than 12 creditors. The goal of the good faith rule, out of which grows this inquiry after what a petitioning creditor should have known, is to assure that a petition is not initiated in bad faith merely to invoke jurisdiction. "If the original petition was a sham, prepared with a view of being later supported by intervention of other creditors, joinder should be denied." *In re Rite–Cap, Inc.*, 1 B.R. 740, 741 (Bankr. D.R.I.1979). It is not for the creditor to prove, in the face of the debtor's contention that it has more than 12 creditors, that the petitioning creditor nonetheless filed the petition in good faith (as the test proposed here by the debtor obliquely suggests), but rather for the debtor to put on proof that the petitioning creditor initiated the case in *bad* faith, thereby precluding the petitioning creditor from soliciting other creditors to intervene and join in the involuntary petition to cure the defect should it prove that, after all, the debtor *does* have more than 12 creditors.

■ The issue, to reiterate, is not whether the debtor *in fact* has more than 12 creditors. Rather, it is whether, under all the circumstances, the petitioning creditor can be

shown to have *known* that the debtor had more than 12 creditors but the creditor initiated the petition anyway, evidencing an attempt to improperly invoke bankruptcy jurisdiction. Thus, it is not enough for the debtor to simply put on a prima facie case that the debtor has more than 12 creditors, expecting thereby to shift the burden of going forward to the creditor. In fact, such proof will *not* succeed in shifting the burden, *vis-a-vis* making a demonstration of bad faith in the creditor's initiation of the case. No, the debtor must prove more. And we have already seen, the debtor has failed to prove that SACU actually knew that the debtor had more than 12 creditors.

Which brings us back, again, to the "should have known" issue. It is for the debtor to put on a prima facie case that the petitioning creditor should have known that the debtor had more than 12 creditors. The evidence presented does not even make out a *prima facie* case to that effect. The debtor, for example, suggested that the creditor should have known to check in Colorado for evidence of debts, because the debtor goes skiing in Colorado. Again, the creditor is presumably expected to have known that numerous unsecured deficiency claims were even then being asserted against the debtor for a variety of debts relating to real property, even though the only public record to even suggest such liability would be the foreclosure records in the county courthouse. Even were we to assume that the "should have known" standard compels a search of the property records of a putative debtor as a preliminary to filing (a suggestion this court is reluctant to accept), it would have done the creditor little good in this case, given that the properties generating the deficiencies are cast all over South Texas, to say nothing of other properties in Colorado and who knows where else. Such an obligation would compel the "reasonable" creditor to initiate a deed search in all 254 counties of the state of Texas, together with all other counties in all other states in which the debtor might possibly have property. That is not a reasonable or legitimate expectation to impose on petitioning creditors.

Nor will debtor's suggestions about the various Financial Statements in the hands of SACU be at all availing to assist the debtor. Acknowledging that the court rejected the factual contention that the September 1994 Financial Statement was furnished to SACU, the debtor next argues, in essence, that SACU should have ignored the Financial Statement that *was* furnished (one that showed only $1,300 worth of liabilities) as so patently false that it could not reasonably be relied on and that, instead, SACU should have been required to delve into the *1991* Financial Statement to second guess the debtor's representations made in the 1993 Financial Statement.

These contentions will simply not carry water. This court will simply not rule that it is *bad faith* for a federally insured financial institution to accept at face value a financial statement given to that institution as part of a workout proposal. But more to the point, in this case the testimony of the debtor himself was that the 1993 Financial Statement as restated was little different from the *original* 1993 Financial Statement. The latter simply included the home mortgage. According to the debtor, his accountant for some inexplicable reason took a second look at the various documents that had created the self-settled trust and associated transactions, and had suddenly realized that not even the home mortgage was the debtor's personal liability. In short, the debtor fully intended the world to believe that he himself was insulated from liabilities, as were his assets. But there are consequences to taking such a position, and one is that such a debtor will no longer have enough of his own creditors to resist being placed into bankruptcy by less than three creditors. The debtor may not both have his cake and eat it too.

It borders on the ludicrous to suggest that SACU had an affirmative duty *not* to believe anything about a Financial Statement slightly over a year old, because it differed so markedly from one *three* years old. The whole point of updating financial statements, after all, is that things change. The new financial statements are expected to reflect these changes, a voluntary baring of the soul by the debtor, if you will. We will not an-

nounce here a rule that creditors in the position of SACU have an affirmative duty not to believe financial statements submitted, an affirmative duty to second guess them, on pain of a finding of bad faith.

But even were we to adopt such a rule, it would offer the debtor no assistance. For the debtor stated that the financial statement for 1991 was itself practically inaccurate. It did not reflect the subsequently executed marital agreement, nor did it reflect the value of transfers of property made by the debtor and his spouse into the partnership beneficiary or the trust itself. The 1991 Financial Statement was itself a faulty guide. If SACU had used this statement as a starting point, any claims it might have uncovered would have been only by pure serendipity. The law will not impose on a creditor, on pain of damages for failure to pursue, an affirmative duty to chase after serendipity. Nor will this court. *See In re Crown Sportswear, Inc.*, 575 F.2d 991, 994 (1st Cir.1978).

This is not a case in which a creditor was avoiding or denying knowledge of additional creditors. *See In re Eberhart Moving & Storage, Ltd.*, 120 B.R. 121, 123 (D.N.D. 1990). This is not a case in which the petitioning creditor adopted a strategy of "file and wait." *In re Caucus Distributors, Inc.*, 106 B.R. 890, 907 (Bankr.N.D.Va.1989). This is not a case in which the creditor failed to pursue additional inquiries that would not have been time-consuming or disproportionate to the relief requested. *In re Godroy Wholesale Co.*, 37 B.R. 496, 500 (Bankr. D.Mass.1984). This is a case in which the most the debtor has been able to muster in support of his allegation is innuendo and twenty-twenty hindsight. Neither is the stuff of which a case of bad faith on the part of the creditor can be grounded. The debtor has simply offered no credible evidence at all to suggest that, by any reasonable standard, this creditor should have known that this debtor had more than twelve creditors.

It is not for the creditor to prove its good faith. That is presumed. It was for the debtor to put on evidence of bad faith. It has failed in this task.

For all of the foregoing reasons, the application for temporary restraining order is denied.

So **ORDERED.**